**Estelle DAVIS, Appellant,**

v.

**RENTAL ASSOCIATES, INC., t/a Federal Finance Realty, Appellee.**

**No. 80–180.**

District of Columbia Court of Appeals.

Argued En Banc Oct. 26, 1981.

Decided Jan. 27, 1983.

John E. Scheuermann, Washington, D.C., for appellant.

Kenneth J. Loewinger, Washington, D.C., with whom Lisa J. Dessel, Washington, D.C., was on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY, KERN, NEBEKER, HARRIS,* MACK, FERREN, PRYOR and BELSON, Associate Judges.

KERN, Associate Judge:

The court, sitting en banc, is called upon to determine whether the trial court is empowered to strike a tenant's pleadings and enter judgment of possession in favor of the landlord in the following circumstances: when a tenant has failed to comply with a court-imposed protective order requiring him to deposit the rent due each month into the court registry pending determination of the issue of the right of possession.

The tenant in the instant case (appellant) contends that her right to constitutional due process was violated by the court's entry of judgment in favor of the landlord (appellee) for her failure to maintain payments of rent each month "without affording her a hearing on the merits of her defenses [to the landlord's suit for possession.]" (Appellant's Reply Brief at p. 4.) We reject appellant's contention, and we conclude that the trial court is empowered to enter judgment of possession for a landlord (without prejudice to the tenant's counterclaim) when the tenant has filed to abide by the terms of the court's order that the monthly rental be paid into the court's registry pending determination of the landlord's right to possession. We also set forth certain considerations which we deem appropriate for the trial court to weigh in such a situation.

I

Preliminarily, we note that the problems peculiar to landlord and tenant relationships have created a unique body of law and similarly unique judicial procedures. First and foremost, the Landlord and Tenant Branch of the Civil Division of the Superior Court of the District of Columbia was intended to determine disputes between landlord and tenant in a summary fashion. As this court most recently stated in *Mahdi v. Poretsky Management, Inc.,* D.C.App., 433 A.2d 1085 (1981):

> Proceedings in the Landlord and Tenant Branch are of a summary nature, and time is of the essence. In *Mendes v. Johnson,* 389 A.2d 781 (D.C.App.1978), [we] ... held that the availability of "a summary procedure whereby a landlord could quickly reacquire possession from a defaulting tenant with the aid of judicial process" justified the abrogation of the common law right of self-help and the rejection of precedents holding that such right had been preserved. *Accord: Lindsey v. Normet,* [405 U.S. 56, 71, 92 S.Ct. 862, 873, 31 L.Ed.2d 36 (1972) ] (Oregon's

---

* *Associate Judge* HARRIS was a member of the en banc court at the time of argument. He retired from this court effective February 5, 1982.

unlawful entry and detainer statute enacted "to alter the common law and obviate resort to self-help and violence."). [*Id.* at 1088.]

As pointed out by Judge Schwelb of the Superior Court in *Management Partnership, Inc. v. Garris,* 109 D.W.L.R. 789, 795 (No. 97570–79, March 17, 1981), in a Memorandum Opinion and Order:

In order to protect the landlord's right to prompt access to his premises, the procedural protections available to litigants in summary proceedings are substantially curtailed. Service by posting is permitted, Super.Ct. L & T R. 3, despite its obvious unreliability. Discovery, a matter of right in most civil cases, is authorized in the Landlord and Tenant Branch only "for good cause shown and with due regard for the summary nature of the proceedings." Super.Ct. L & T R. 10. If a jury trial is demanded, the case must be "scheduled for trial on an expedited basis", Super.Ct. L & T R. 6, which means as a practical matter that these kinds of cases jump ahead of older litigation which is not entitled to priority on the basis of any connection with summary proceedings for possession. [*Id.*]

## II

Hand in hand with the summary nature of a landlord-tenant proceeding is the mechanism created by the courts to maintain an equitable balance during litigation of the suit for possession: the so-called protective order. "The issuance of a protective order requiring a tenant to pay an amount equal to the agreed upon monthly rent, or sometimes a lesser amount, into the registry of the court has become the norm rather than the exception in the Landlord and Tenant Branch." *Mahdi v. Poretsky Management, Inc., supra* at 1086. In *Bell v. Tsintolas Realty Corp.,* 139 U.S.App.D.C. 101, 430 F.2d 474 (1970), the United States Court of Appeals for the District of Columbia Circuit explained the justification for the issuance of protective orders. Although actions for possession had traditionally been character-

ized as summary proceedings, the summary nature of such actions was to some extent altered by permitting tenants to proceed to a jury trial upon a timely request and a statement of facts underlying a defense. Super.Ct.L & T R. 6. In such a case, the tenant remains in possession during the pendency of a suit for possession, and the landlord is "exposed to a prolonged period of litigation without rental income." *Id.* at 109, 430 F.2d at 482.

We have little doubt that the Landlord and Tenant Branch ... may fashion an equitable remedy to avoid placing one party at a severe disadvantage during the period of litigation. Moreover, we foresee that, normally, the burden of such a prepayment order on the tenant will be neither heavy nor unexpected: *to require that the tenant meet current rental payments during the litigation period is to require only that he fulfill an obligation which he voluntarily assumed at an earlier date when he entered into the lease.* As long as the tenant remains in possession and no finding of a substantial housing code violation has been made, we are unwilling to absolve the tenant completely of his obligation under the rental contract. [*Bell v. Tsintolas Realty Co., supra* at 109, 430 F.2d at 482 (footnote omitted; emphasis added).]

Recognizing that the struggle between tenant and landlord "involves a variety of closely balanced legal and tactical approaches," *Dorfmann v. Boozer,* 134 U.S. App.D.C. 272, 278, 414 F.2d 1168, 1174 (1969), the court went on to state that

the protective purpose of the rent payment requirement ordinarily will be well served simply by requiring only future payments falling due after the date the order is issued to be paid into the court registry. [*Bell v. Tsintolas, supra* at 110, 430 F.2d at 483.]

Thus, *Bell* made clear the Superior Court's authority to enter a protective order was based upon equitable principles to maintain a proper balance in landlord-tenant proceedings.

In *McNeal v. Habib,* D.C.App., 346 A.2d 508 (1975), we recognized the important role of the protective order in landlord-tenant relationships. Not only were there benefits to the landlord that resulted from the entry of a protective order, but a protective order also provided benefits to the tenant:

> First, ... payments made into the registry of the court pending litigation protect his [the tenant's] ability to satisfy his housing needs, in that such payments prevent a tenant from falling further in arrears. [Citation omitted.] Second, a defendant's fellow tenants merit the law's consideration. To the extent that one tenant pays no rent for the use of particular premises, he (1) may make it financially impossible for his landlord to make needed repairs, and (2) heightens the landlord's need to increase rental charges to the paying tenants to compensate for the lost income. These consequences hardly are fair to those tenants who honor their contractual commitments. [*Id.* at 512.]

Further, *McNeal* relied upon *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972).[1] There, the Court stated: "A requirement that the tenant pay or provide for the payment of rent during the continuance of the action is hardly irrational or oppressive." *Id.* at 65, 92 S.Ct. at 869; *McNeal v. Habib, supra* at 513. In *McNeal,* we held that the entry of a protective order was proper where the tenant had been afforded an adequate opportunity to be heard, and that the due process clause did not require an evidentiary hearing prior to the entry of such an order. *Id.* at 513–14. However, we also held that the trial court may not order the disbursement of sums paid pursuant to a protective order without holding an evidentiary hearing. *Id.* at 514.

Most recently, we stated that a "protective order is an equitable tool of the court requiring the exercise of sound discretion on a case-by-case basis." *Dameron v. Capitol House Associates, Ltd.,* D.C.App., 431 A.2d 580, 583 (1981). In that case, we held that the trial judge's action in imposing a protective order while permitting the release of a portion of those monies not in dispute to the landlord was a permissible exercise of the court's "equity power as outlined by *Bell*" to deal with the peculiar situations often presented in landlord-tenant proceedings. *Id.* at 583.[2] It is significant that a protective order has no permanent impact on the rights of the parties but only maintains the status quo between the landlord and the tenant. *Id.* at 587. "The protective order was originally devised to ameliorate the harm of excessive delay attendant to modern landlord-tenant disputes." *Id.* at 586.

## III

In *Mahdi v. Poretsky Management, Inc., supra,* we concluded that the Fifth Amendment does not prohibit the trial court from striking a tenant's pleadings when the tenant, as here, persistently has failed to make payments into court as required by a protective order. In doing so, we adopted a substantial portion of the Memorandum Opinion and Order issued by Judge Schwelb of the trial court in the case of *Arthur E. Morrisette Real Estate v. Hunt,* 109 D.W. L.R. 901 (No. L & T 23841–81, April 8, 1981). That case squarely faced the issue of

---

1. In *Lindsey,* the Supreme Court upheld in pertinent part the constitutionality of an Oregon statute which (1) required trial within six days after service of the complaint unless the tenant provides security in the amount of the accruing rent, and (2) provides for a limitation of the triable issues, precluding a defense based on the landlord's breach of duty to maintain the premises.

2. We outlined the rationale for a protective order and discussed in detail the development of a body of law concerning protective orders. We again emphasized that protective orders are aptly named because they protect both landlords and tenants. *Dameron, supra* at 583 n. 4. In addition, we held that a protective order was not appealable as a "final order" nor was it an appealable interlocutory order, since it "is strictly a preliminary safeguard for the parties and the integrity of the judicial process. It is subject to revision at any time during the judicial process." *Id.* at 585.

whether the trial court had the authority to strike a tenant's pleadings in a possessory action for failure to comply with the court's protective order. We adopted in *Mahdi* the *Morrisette* Memorandum Opinion "to provid[e] the necessary appellate precedent for the trial court to grant the landlord possession when the tenant fails to comply with the protective order." *Mahdi, supra* at 1086.

In discussing the basis for the trial court's authority to strike the tenant's pleadings for failure to pay, we cited two decisions by the federal court of appeals here: *Blanks v. Fowler,* 147 U.S.App.D.C. 215, 455 F.2d 1283 (1971); and *Thompson v. Mazo,* 137 U.S.App.D.C. 221, 421 F.2d 1156 (1970). In *Blanks v. Fowler,* the trial court had issued a protective order requiring monthly payments into the registry and further providing that

> upon failure by the defendant to comply with this order, the defendant's pleadings shall be stricken and judgment for possession be entered in favor of the plaintiff. [*Blanks v. Fowler, supra* at 217, 455 F.2d at 1285.]

While the tenant appealed from the protective order, and the appellate court stayed that order pending appeal, the court issued its own protective order and conditioned the stay on compliance with its order. The court stated that:

> A violation of our own protective order conditioning the stay would, of course, open the door to dissolution of the stay, and that in turn could pave the way to her eviction. [*Id.* at 219, 455 F.2d at 1287.]

The *Morrisette* opinion commented on this passage—recognizing that this dictum "implies that failure to make a protective order payment could under some circumstances result in striking of the pleadings," but also pointed out that the facts in *Blanks* differed from those which then were before the court. *Morrisette, supra* at 904. However, we find it persuasive that the federal court of appeals in *Blanks* clearly contemplated that a tenant's defensive pleadings in a possessory action could be stricken for his failure to comply with a protective order and that an eviction could result.[3]

In *Thompson v. Mazo, supra,* a defendant in a possessory action had interposed a plea of title, and her pleadings subsequently were stricken because she had not posted a $3,000 bond required by the trial court. The District of Columbia Court of Appeals affirmed, but the United States Court of Appeals reversed, holding that the trial court should not have required a bond in a lump sum but rather should have required monthly payments into an escrow account, similar to those made in accordance with a protective order. The federal appeals court stated:

> The guiding principle for the court is, of course, to arrive at a reasonable monthly payment which will, at one and the same time, impose a fair obligation on the defendant, permit the case to be heard on the merits, and assure the plaintiff that if he wins he will, having been denied interim possession, at least receive reasonable intervening rent. To further protect the plaintiff's interests, the court may exercise its discretion over the "sufficient surety," by requiring the defendant to stipulate that he will confess judgment in the possessory action should he default without good cause. [*Id.* at 226–27, 421 F.2d at 1161–62 (footnotes omitted).][4]

---

3. While the court did not directly address the question of the appropriate remedy in such a situation, it was faced with a lower court order which directed that the tenant's pleadings be stricken for failure to comply, and the appellate court did not indicate that such trial court action was improper.

4. The court stressed that it was impermissible to insist on a money bond *beyond the capabili-* ty *of the defendant, viz.,* 20 times her monthly rent under the lease agreement. The court declined to express an opinion on what the statute required of a defendant who was financially unable to enter into an "undertaking" with surety sufficient to protect a plaintiff's legitimate interests. The court noted that the parties had agreed that $150 was a reasonable monthly payment and that the $3,000 bond had

We believe that the language in these decisions fully supports court-imposed sanctions, including striking of the pleadings and entry of judgment, when a tenant has failed to comply with a protective order.

We recognize that while our decision in *Mahdi* confirms the trial court's authority to impose sanctions, including the entry of judgment for the landlord in a case where the tenant fails to abide by the protective order, the trial court must carefully examine several specific factors before deciding such relief is appropriate. It is to these factors we now turn.

### IV

At the outset, we note our concurring colleague's urging that "at the hearing on the landlord's motion for judgment of possession, the trial court's evaluation of the tenant's default on payments into the registry should include a careful consideration of the equities—and possible inequities—in the *initial* establishment of the landlord's security." (Emphasis added.)

We do not deem it necessary or proper that the trial court be required—when the parties appear because the tenant has failed to comply with the court's original protective order—to consider the propriety of the amount fixed by that court's *original* protective order. We so conclude because, at the time the court originally determines what the tenant should pay into the registry, *pendente lite,* the tenant had ample opportunity to make full presentation on the condition of the premises and other equities in his favor.[5] In addition, at all times subsequent to the court's entry of the protective order, the tenant has ample opportunity to seek modification of that original order so far as minor changes in the

scheduling of payments are concerned on the ground of temporarily changed circumstances, such as a personal emergency affecting his earnings. Therefore, we cannot accept our concurring colleague's proposed "rule of thumb" which, in effect, *requires* the trial court to re-examine the amount of the *pendente lite* payment fixed by its original protective order *before* proceeding to determine what action to take with regard to the tenant's failure to abide by that order.

In our view, the trial court must first consider at the hearing on the landlord's motion for judgment of possession the extent of the tenant's noncompliance with the order. Noncompliance includes the failure to make full payments into the court registry, failure to make timely payments, or the failure to make any payment whatsoever.[6] The most egregious noncompliance, of course, would be a tenant's failure to make any payments into the court registry over an extended period.

The next consideration by the trial court is the tenant's reason for noncompliance. Where a tenant has made good faith efforts to inform the court of an inability to make a timely payment, or to make a full payment due to extraordinary financial setbacks, the court may, in its discretion, permit a tenant to make a late payment or to make a payment of less than the full amount rather than enter judgment for the landlord. However, as we pointed out in *Mahdi, supra* at 1088, adopting Judge Schwelb's opinion:

> [I]nability to pay rent due to poverty or lack of funds has never been, and is not now, a defense to a possessory action based on nonpayment. Judgments of

been based on this figure. *Id.* at 226 n. 19, 421 F.2d at 1162 n. 19.

We note in passing the federal circuit court's comment in *Bell, supra* at 109, 430 F.2d at 482:
> [T]o require that the tenant meet current rental payments during the litigation period is to require only that he fulfill an obligation which he voluntarily assumed at an earlier date when he entered into the lease. . . .

5. Such presentation may be made by proffer or, if the trial court deems it appropriate in a particular case, by adducing evidence.

6. The Landlord and Tenant Branch permits tenants to seek the court's permission to allow late payments, or to modify or vacate protective order payments. *See generally Dameron, supra; Mahdi, supra;* and *Garris, supra.*

possession are routinely and summarily issued in the Landlord and Tenant Branch where a tenant is unable to pay, even under circumstances which would make any humane judge wince and grit his teeth. To put it in the vernacular, if you cannot pay the rent, you cannot stay on in the landlord's apartment.

Further, in determining whether a tenant should be permitted to make a late payment or a partial payment, the trial court must recall "that the Constitution expressly protects against confiscation of private property or the income therefrom." *Lindsey v. Normet, supra* 405 U.S. at 74, 92 S.Ct. at 874. We highlighted this consideration of the landlord's rights when examining in *Mahdi* the effect on the landlord of *not* striking the tenant's pleadings and entering judgment for the landlord.[7]

■ Finally, because "the protective order is . . . a preliminary safeguard for the parties and the integrity of the judicial process," and because such orders were intended to preserve a "balance" in landlord-tenant proceedings after *Javins*,[8] any failure to comply in all respects with such an order should not be regarded lightly. We conclude that the striking of the tenant's pleadings and the entry of judgment for the landlord is an appropriate sanction for a trial court to impose in the exercise of its equity power when the tenant has neither abided by the terms of the order nor sought to modify such order.[9]

V

In this case, appellee-landlord initiated a suit for possession for non-payment of rent on September 10, 1979. On September 19 the parties appeared in the Landlord and Tenant Branch and counsel was appointed to represent appellant-tenant. Appellee's oral motion for a protective order in the amount of the monthly rent was granted without objection, and appellant was notified that the amount of $176 was to be paid into court by September 24, 1979, and on the 24th day of each month thereafter

---

7. "If this litigation is permitted to continue with no funds in the registry and with Tenant on the premises, Landlord will not be in a position to rent the unit to a paying tenant. He will continue to be deprived of funds which he may well need to pay his mortgage, to maintain other tenants' apartments, and for other appropriate purposes." *Id.* at 1089.

8. *Javins v. First National Realty Corp.,* 138 U.S.App.D.C. 369, 428 F.2d 1071, *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970).

9. The question of appropriate alternative sanctions available to a trial court was raised during oral argument of this case. Appellant's counsel suggested that a trial court should *only* be permitted to "strike a tenant's jury demand, or strike the counterclaim" instead of imposing the more serious sanction of striking the pleadings and entering judgment for the landlord. By applying these less drastic sanctions, appellant argued, the court would thereby allow the tenant another opportunity to comply with the protective order and would not be terminating the possessory action in the landlord's favor.

However, upon consideration of the important function of the protective order in maintaining the proper balance in the summary landlord-tenant proceedings as discussed *infra,* we believe that depriving the trial court of the sanction of entering judgment in a possessory action when the tenant fails to pay his rent into the registry as directed by the court's protective order would unnecessarily and improperly impede the functioning of the Landlord and Tenant Branch.

The dissent of Chief Judge Newman suggests that the breach of the court's protective order should be sanctioned by a fine for contempt or the award of costs incurred by the landlord in seeking compliance rather than by the more severe penalty of entry of judgment for the landlord. Given the summary nature of the landlord-tenant proceeding and the unusually large number of such cases, it is impracticable to enlarge and complicate these proceedings with more procedures, *viz.,* determinations of contempt and/or orders upon motions seeking costs.

In addition, we point out that the trial court's authority to enter judgment on the ground that a party has failed to abide by the terms of a protective order is only one of several instances in which the court is empowered to enter judgment against a party for failure to act in accordance with procedural rules. Thus, a judgment may be entered against a party if during the proceedings that party fails to appear or fails to abide by a stipulation. *See* Super.Ct. Civ.R. 39–I(a). Therefore, the entry of judgment for failure to abide by a court's protective order is not unique as the dissent suggests.

pending the conclusion of the litigation. On October 3, 1979, appellant was permitted to proceed in forma pauperis and filed an answer to the complaint and a counterclaim for past rent paid.

Appellant deposited the first protective order payment, due on September 24, into the registry of the court on October 1, 1979, with the court's permission for such a late filing. The second protective order payment, due on October 24, was deposited into court on November 6, 1979, again following the court's permission to file a late payment. Appellant failed to deposit the November, December and January payments, and she never sought an order modifying or vacating the protective order.

On February 6, 1980, appellee filed a motion to strike appellant's pleadings and to enter judgment in its favor on the ground that appellant had failed to comply with the court's protective order. A hearing on the motion was scheduled for February 12 and, at the hearing, appellant was not present. The court struck her pleadings and entered a judgment for possession for appellee. On the next day, appellant's counsel moved the court to stay execution of the judgment, claiming that he had not received notice of the hearing. Apellant's motion was granted and the execution of the judgment was stayed until February 20, 1980. At that time, appellant was to explain to the court the reason for her failure to comply with the protective order.

At the hearing on February 20, appellant's counsel sought permission to pay the three monthly payments due and owing with "cash in hand." He proffered that appellant had been unable to make the payments because she had injured herself by falling down the apartment's steps in December and that she had "not been able to obtain a normal source of income that she has available to her." [10]

After hearing appellant's explanation for her noncompliance with the protective order, and upon considering the possible prejudice to appellee resulting from the grant of appellant's motion to vacate the prior order, the court denied the motion to vacate the judgment of February 12. Appellant now claims that the trial judge abused his discretion in failing to vacate the judgment for possession in favor of the landlord entered upon the basis of her failure to abide by the protective order.

■ Turning to the factors previously discussed in Part IV, we note that appellant had failed to comply with the protective order from its very inception because she submitted the first two payments late. Thereafter, appellant failed to deposit payments for November, December or January, and she had not requested permission to file late payments or taken any steps to explain her noncompliance. As pointed out earlier, a total failure to make payments as required by the court's protective order is the most egregious form of noncompliance with a court-created remedy intended to maintain the orderly administration of justice in the high-volume Landlord and Tenant Branch.

At the hearing on February 20, after considering appellant's reason for her noncompliance with the order, the court questioned appellant's counsel as to why the court had never been informed of the tenant's injury or why permission to make late payments had never been requested. Judge McArdle pointed out that a representative of appellant had asked the court in January for permission to make a late payment but had failed to mention appellant's injury.[11] It was at this point in the hearing that appellant again offered to "pay the protective order up to date."

---

10. On appeal, appellant alleges in her brief that this "injury actually occurred prior to November 24, 1979." However, the official transcript of the February 20 hearing, when appellant herself was present, reflects that appellant's counsel stated that the injury occurred in December.

11. However, the docket does not reflect any entries for January 1980, and the record contains no indication of how the request was made.

When Judge McArdle pressed appellant's counsel as to why appellant had failed to notify the court of her injury, appellant's counsel answered that he was "not sure if we [counsel] were aware of it in January." The trial court found this explanation insufficient and accordingly denied appellant's motion to vacate the judgment.[12]

The lack of convincing testimony regarding appellant's reasons for noncompliance was decisive to the trial court's decision to deny the motion seeking to vacate the judgment for possession. Based upon this record, we conclude that the trial court did not abuse its discretion in refusing to vacate the judgment for possession to appellee. *Kaiser v. Rapley,* D.C.App., 380 A.2d 995, 997–98 (1977); *Smith v. Warren Petroleum Corp.,* D.C.Mun.App., 126 A.2d 152, 153 (1956).

## VI

Appellant also asserts that the trial court's judgment in favor of appellee has barred her right not only to a hearing on the merits of the defenses in her answer to the complaint for possession, but also leaves "the collateral consequences unclear." (Appellant's Reply Brief at 7 n. 7.)[13]

■ Collateral consequences are of particular moment in a case such as this where appellant has asserted in a counterclaim that she is entitled to damages by reason of violations of the Housing Code by appellee. Turning to the consequences of the trial court's entry of judgment for appellee, we have noted that the purpose of the protective order is to preserve the status quo in a contested suit for possession until it can be determined on its merits. Such an order is a creature of courts, fashioned out of equity, to maintain the proper balance, *pendente lite,* in the unique arena of landlord-tenant litigation. When the tenant fails to abide by the protective order, the trial court may, if appropriate under the factors outlined above, strike the tenant's pleadings as they relate to the issue of possession and award judgment for possession to the landlord.

■ However, we are not persuaded that in this particular circumstance it is equitable to bar the tenant from any right to pursue in the future an independent civil action for a claim for back rent paid that she may have based upon alleged violations of the Housing Code extant on the premises during the time she occupied the premises as tenant. *See generally Lindsey v. Normet, supra,* 405 U.S. at 66, 92 S.Ct. at 870.

In the first place, such a claim asserted as a counterclaim at the time the tenant defends against the landlord's suit for possession is not reached, much less disposed of, by the trial court in the particular circumstance of its entering judgment for possession against the tenant for failure to abide by the protective order.[14]

Equally important, since we are primarily concerned with maintaining a balance in landlord-tenant proceedings, we are not persuaded that barring the tenant from pursuing in the future a claim independent of the issue of possession is equitable. Recently in *Mahdi* we stated:

12. Judge McArdle also recognized the prejudice to appellee in that the trial date of February 21 had been removed from the calendar due to the entry of the February 12 judgment and appellee had released its witnesses. Further, appellee had received no income from the property for at least three months and had lost the security afforded by the protective order as of November 6, 1979.

13. The trial court's entry of judgment after striking the pleadings of appellant does not state whether such striking was with or without prejudice.

14. The tenant's counterclaim against the landlord for rent paid based upon alleged housing code violations in the past cannot be said to have been "material and relevant" to the court's judgment awarding possession to the landlord based solely upon the tenant's failure to comply with the court's protective order. 1B Moore's *Federal Practice,* 0.443[5], at 3919 (3d ed.1974). Further, appellant's counterclaim was never "raised and litigated and actually adjudged" during the summary entry of a judgment of possession to landlord. These are among the requirements if collateral estoppel is to apply in a subsequent action. 1B Moore's *Federal Practice* 0.443[1], *supra* at 3901.

The striking of Tenant's pleadings will affect [the tenant] only insofar as it precludes [the tenant] from continuing to live in an apartment at which she [or he] is demonstrably unable to pay the rent. Although possession is important—it is the issue over which this case is being litigated—the fact that a variety of legal remedies remain to Tenant is a significant element in the weighing of equities in a case such as this, in which the losing party, whoever he or she may be, can non-frivolously cry constitutional foul. [*Id.* at 1090.]

We leave to the discretion of the trial court the determination of how to treat in its docketing process any complaint which might be filed by appellant in the future seeking recovery of some portion of rent paid. Whether this kind of complaint should be accorded priority on the Civil Division calendar and treated as if filed on the date of the counterclaim in the suit for possession brought by landlord in the Landlord and Tenant Branch, *see Management Partnership, Inc. v. Garris, supra,* is a matter we deem best determined by the trial court.

### VII

We turn now to the dissent of Chief Judge Newman. Stripped of hyperbole, this dissenting opinion asserts that the conclusion we have reached in the instant case is both unfair and "at odds" with the so-called redemption doctrine established by this court in *Trans-Lux Radio City Corp. v. Service Parking Corp.,* D.C.Mun.App., 54 A.2d 144 (1947). There, we reaffirmed the rule that a tenant lawfully occupying the premises might stay his eviction even after the landlord has obtained judgment for possession by paying to the landlord before

"execution is executed" the rent due, together with all interest and costs owed at the time of the tender. In no way does our holding today impinge upon the proposition enunciated in *Trans-Lux.* We hold in the instant case that the trial court may, but is not required to, enter judgment of possession for the landlord in a pending suit for possession if the tenant fails to abide by the terms of the court's protective order. Our holding does *not* preclude the tenant, after judgment is entered against him for violation of the protective order, from proceeding to tender to the landlord all monies due and owing before "execution is executed," as provided by *Trans-Lux, supra* at 146.[15]

■ The dissent fails to recognize that the doctrine of redemption and the mechanism of the protective order are quite distinct concepts and each is designed to achieve differing objectives.[16] Redemption, a doctrine that does not require the court to serve as referee, permits the tenant to remain on the premises he leases if he pays the landlord directly all the rent, interest, and costs owed before the landlord actually attempts to re-enter the premises.

In contrast, the protective order, which introduces the court into the landlord-tenant relationship as a neutral stakeholder during the litigation of their dispute, *see Bell v. Tsintolas Realty, supra; McNeal v. Habib, supra,* permits the tenant to refrain from paying his rent directly to the landlord but requires the tenant to deposit payments each month into the court registry until such time as the court adjudicates the dispute. By this mechanism, the landlord is ensured that the rent due and owing by the tenant under the lease has in fact been paid, albeit to the court registry.

**15.** We emphasize that the remedy provided in *Trans-Lux* is based entirely upon equitable considerations, the determination of which are particularly within the trial court's discretion. *Id.* at 148; *Molyneaux v. Town House, Inc.,* D.C. App., 195 A.2d 744, 747 (1963). Thus, the most basic requirement which must be met before equitable relief may become available is that "if the tenant seeks equity he must do equity."

*Trans-Lux, supra* at 148; *Molyneaux, supra* at 747.

**16.** It will be noted that the protective order was created by the courts of the District of Columbia well after *Trans-Lux* with no thought that it was in any way inconsistent with the doctrine of redemption.

The dissent urges that when, as here, a tenant has failed to pay the rent for each of three months—all in violation of the court's protective order—the tenant should be permitted to proffer at the last possible moment the rent for this period and avoid the entry of judgment of possession in favor of the landlord. This should be so, argues the dissent, because "the landlord suffers no prejudice if the tenant cures his error."

In the first place, it is surely disingenuous to characterize the tenant's failure to pay rent to the registry of the court for three consecutive months as mere "error." As Judge Wright of the federal circuit court here has noted, the burden of payment by the tenant of his rent pursuant to the protective order "will be neither heavy nor unexpected: to require that the tenant meet current rental payments during the litigation period is to require only that he fulfill an obligation which he voluntarily assumed at an earlier date when he entered into the lease." [17]

Moreover, the tenant's failure to pay his rent into the court's registry while the litigation proceeds does, in fact, prejudice the landlord. In such a case, the landlord cannot know whether the tenant's default signifies an abandonment of his case and an intention to shortly vacate the premises. In addition, we must consider whether permitting the tenant to remain in possession of the premises without paying any rent deprives the landlord of property without just compensation. *Lindsey v. Normet, supra,* 405 U.S. at 74, 92 S.Ct. at 874; *Mahdi, supra* at 1089.

Finally, if we were to accept the dissent's suggestion that a tenant's failure to abide by a protective order must be excused upon a proffer of back rent at any time before the entry of judgment of possession to the landlord, and tenants were permitted to ignore with impunity such protective orders, there would be no incentive whatsoever to litigants in the Landlord and Tenant Branch to follow the court's order, which was entered solely to maintain the status quo between landlord and tenant while they resolve their dispute in a court of law and in an orderly and efficient manner.

In sum, this dissent's concern that our holding denies an indigent tenant with a meritorious cause the opportunity to have his claim heard is wholly incorrect. Rather, our holding today reaffirms the role of the trial court as a neutral stakeholder, or referee, with authority to enforce its orders when they are violated. In this way we encourage rather than impair the fair and prompt judicial resolution of landlord-tenant disputes.

*Affirmed.*

FERREN, Associate Judge, concurring in the judgment only:

I.

I concur in the judgment essentially for the reasons set forth in Part V of Judge KERN's plurality opinion. The trial court did not abuse its discretion in declining to vacate the judgment of possession for the landlord. The tenant-appellant—who had counsel—had never opposed a protective order in the amount of existing rental payments, had failed to make payments for November, December, and January, took no timely step to request permission for late payment or to seek modification of the protective order, and thus made no timely effort to relate her defaults to her eventually proffered excuse for nonpayment: an injury from falling down the apartment stairs in November or December.

Under the circumstances, moreover, the judgment does not appear harsh, for under the doctrine of *Trans-Lux Radio City Corp. v. Service Parking Corp.,* D.C.Mun.App., 54 A.2d 144 (1947), appellant—despite the court's order here—still could effect a stay of eviction by tendering to the landlord "all accrued rent to date of tender, interest on all accruals from date of accrual to date of tender, and all costs." *Id.* at 148. At the last hearing in this case, appellant did

---

**17.** *Bell v. Tsintolas Realty Co., supra* at 109, 430 F.2d at 482.

tender all the accrued rent. *Trans-Lux,* of course, would have required an additional payment of interest and costs, and appellant would have had to remit all payments to the landlord, not to the court registry. But these additional requirements are not inequitable, in view of appellant's inaction during the first few months of the tenancy.[1]

## II.

I do not concur in the plurality opinion primarily because it does not articulate procedures for the trial court that clearly and equitably balance landlord and tenant interests. Most critical is the failure to note that, at the time the level of payments into the registry is set, the tenant is entitled to "an adequate opportunity to be heard," *McNeal v. Habib,* D.C.App., 346 A.2d 508, 514 (1975), coupled with a corresponding finding, as to whether there is evidence of code violations sufficient to warrant payments of less than the full monthly rental. As stated in *Bell v. Tsintolas Realty Co.,* 139 U.S.App.D.C. 101, 111, 430 F.2d 474, 484 (1970):

> [I]n the ordinary course of events, if prepayment of rent is required, the tenant will be called upon to pay into the court registry each month the amount which he originally contracted to pay as rent. However, there are circumstances likely to arise which, in our judgment, require that the trial court consider imposition of a lesser amount. Certainly a lesser amount would be desirable when the tenant makes a very strong showing that the

condition of the dwelling is in violation of Housing Regulation norms.

If the trial court did not afford a tenant the opportunity to make such a showing at the time the court set the payment level, the court may have imposed an excessive security requirement. Realistically, moreover, a fair opportunity to make such a showing may depend on whether the tenant had counsel available to assist. Accordingly, at the hearing on the landlord's motion for judgment of possession, the trial court's evaluation of the tenant's default on payments into the registry should include a careful consideration of the equities—and possible inequities—in the initial establishment of the landlord's security.

In response to this concern, my colleagues simply assert it is irrelevant for the following reason:

> [A]t the time the court originally determines what the tenant should pay into the registry, *pendente lite,* the tenant had ample opportunity to make full presentation on the condition of the premises and other equities in his favor. In addition, at all times, subsequent to the court's entry of the protective order, the tenant has ample opportunity to seek modification of that original order so far as minor changes in the scheduling of payments are concerned on the ground of temporarily changed circumstances, such as a personal emergency affecting his earnings. [*Ante* at 826 (footnote omitted).]

This generalization of an "ample opportunity to make full presentation" at the outset

---

1. For the sake of complete analysis it is important to note that, given the plurality view (in which I join) that a damage remedy for code violations is not foreclosed by a trial court judgment granting possession to the landlord, *ante* at 829, it follows that a damage remedy for code violations would not be foreclosed by a tender under *Trans-Lux.*

Another aspect of the damage remedy is important. In preserving a tenant's counterclaim attributable to housing code violations during the period of default, the plurality opinion states, *ante* at 830:

> We leave to the discretion of the trial court the determination of how to treat in its dock-

eting process any complaint which might be filed by appellant in the future seeking recovery of some portion of rent paid. Whether this kind of complaint should be accorded priority on the Civil Division calendar and treated as if filed on the date of the counterclaim in the suit for possession brought by landlord in the Landlord and Tenant Branch, *see Management Partnership, Inc. v. Garris,* 109 D.W.L.R. 789, 795 (No. 97570–79, March 17, 1981), is a matter we deem best determined by the trial court.

I perceive no basis for assigning a later priority to such a claim that the one that would have been assigned in the absence of the default.

or "to seek modification" thereafter is too casually made. The majority altogether ignores the fact that, according to studies conducted under the auspices of the Superior Court Executive Officer for 1979, 1980, and 1981,[2] "in the Landlord and Tenant Branch of Superior Court, 99% of the actions have at least one party who is not represented by counsel—almost always the tenant." *Davis v. Bruner,* D.C.App., 441 A.2d 992, 999 n. 4 (Ferren, J., dissenting) (citation omitted), *vacated and reheard en banc, decision pending,* 441 A.2d 1000 (1982). Undoubtedly, the percentage of pro se tenants will be lower once these statistics are adjusted for defaults, dismissals, failure to serve process, and settlements, leaving the category we are concerned about: contested cases set for trial. But given the fact that substantial numbers of tenants cannot afford to pay for counsel,[3] and that federally subsidized civil legal services for the poor, including law school programs, are being severely cut back,[4] there can be no question that many tenants whose cases are continued for trial become subject to protective orders without the help of a lawyer.

It is therefore questionable, at best, to assume that all tenants have an "ample opportunity" to litigate the equities of a protective order at the time it is set, let alone thereafter. In order for a tenant to make "a very strong showing" in busy landlord-tenant court "that the condition of the dwelling is in violation of Housing Regulation norms," *Bell, supra* at 111, 430 F.2d at 484, a lawyer's help is ordinarily required. Thus, it is even more questionable, and may be grossly unfair, to permit the ultimate sanction—striking a tenant's pleadings for default on payments under a protective or-

der—without requiring the court first to review the equities of that order.

Because appellant, unlike many tenants, did have counsel throughout these proceedings and thus had an opportunity, at the outset and thereafter, to challenge the level of payments into the registry, my concerns about the plurality opinion are not strictly relevant to the outcome of this case. But my colleagues have decided to "set forth certain considerations which [they] deem appropriate for the trial court to weigh," *ante* at 822, in all situations where "the tenant has failed to abide by the terms of the court's order that the monthly rental be paid into the court's registry pending determination of the landlord's right to possession." *Id.* I agree that such guidelines are desirable, but I also believe it is important, in providing guidelines, not to omit a significant equity clearly established in prior law. My colleagues have generalized from the facts of this case—including the availability of counsel—to provide guidelines with a material omission likely to foster unconscionable results in other cases.

In sum, it is important to stress the following rule of thumb: Before granting judgment of possession to a landlord for a tenant's default on payments into the court registry under a protective order, the trial court must review the equities of the protective order itself as applied to the period of default. The less attention the trial court paid to the condition of the premises in initially setting or subsequently reviewing the level of payments into the registry, the more likely it is that the equities eventually will cut against a landlord who seeks possession, rather than a lesser remedy,

---

2. Pro Se Report 1981, Prepared by Superior Court Division of Research, Evaluation and Special Projects 4, 6 (April 30, 1982); Report of the Standing Committee on Civil Legal Services of the Judicial Conference of the District of Columbia 11, App. E (May 21, 1981); Report of the Committee on Civil Legal Services of the Judicial Conference of the District of Columbia 37 (May 15, 1980).

3. Report of the Committee on Civil Legal Services, *supra* at 2–15.

4. Memorandum to Members of the District of Columbia Bar from the Standing Committee on Civil Legal Services, Judicial Conference of the District of Columbia, re Federal Cutbacks in Civil Legal Services to the Poor, January 14, 1982, at 1–3.

when the tenant defaults on those payments.[5]

NEWMAN, Chief Judge, dissenting:

The plurality opinion misstates the central issue in this case as being whether the court is empowered to strike a tenant's pleadings and enter a judgment of possession in favor of a landlord, when the tenant has failed to comply with a protective order requiring monthly payments to the court as security for the landlord pendente lite. The first three quarters of the plurality opinion is thus devoted to knocking down the straw man that the sanction of striking pleadings is *never* authorized when a tenant fails to comply with a protective order. Having posed itself an easy question, the plurality arrives at a facile answer.

However, this is done at the price of disregarding the crucial circumstance of this case: that the tenant proffered full payment of the amount due under the protective order before trial, thereby affording the landlord exactly the same degree of security he would have had if the payments had been made on time. The reader is not even apprised of this fact until near the end of the plurality opinion. Even at that late point, the fact is merely reported, never to be mentioned again. The proffer of full payment is studiously excluded from the factors the plurality deems pertinent to the choice of an appropriate sanction.

In fact, application of the extreme sanction of eviction is not only at odds with the redemption doctrine, but is unnecessarily and unjustly harsh as well.

When a landlord brings a successful suit for eviction on the ground of nonpayment of rent, the tenant retains a right of redemption. Even after the tenant's constitutional right to air his defenses before a jury[1] has been respected, and the court has entered a final order on the merits, he may regain his right to occupancy by proffer of the arrearages at any time before execution. *Trans-Lux Radio City Corp. v. Service Parking Corp.,* D.C.Mun.App., 54 A.2d 144 (1947). This principle is both "well-established" and "entitled to liberal application" in this jurisdiction. *Smith v. Warren Petroleum Corp.,* D.C.Mun.App., 126 A.2d 152, 153 (1956). Yet today the court holds that a tenant may be deprived of his right of occupancy *without* an opportunity to show that he is entitled to remain on the premises, because of failure to make pendente lite security payments on time, even when he offers to cure the defect before any significant harm is done. In light of the fact that the landlord suffers no prejudice if the tenant cures his error, and with due regard to the paramount interest in providing a hearing on the merits, such an anomalous and extreme result cannot be countenanced.

Although it has not always succeeded, our system of justice aspires to afford an opportunity for any citizen to seek judicial vindication when he believes his legal rights are being invaded. At least until recently, the dominant trend has been a gradual broadening of access to the judicial system. Among others, impecunious citizens proceeding in forma pauperis—such as appellant—have benefited from the opening of the courthouse doors. At present, in only one of the myriad types of lawsuits is a party in the District of Columbia routinely required to make advance payments as a

5. The inequity of a particular protective order will be greater if that order is not appealable. The plurality opinion states that in *Dameron v. Capitol House Associates, Ltd.,* D.C.App., 431 A.2d 580 (1981), "we held that a protective order was not appealable as a 'final order' nor was it an appealable interlocutory order ...." *Ante* at 824 n. 2. *Dameron* appears to be inconsistent with *Blanks v. Fowler,* 147 U.S. App.D.C. 215, 455 F.2d 1283 (1971), in which the United States Court of Appeals for the District of Columbia Circuit allowed an appeal of a protective order. Because the federal circuit court issued the *Blanks* decision on January 12, 1971, it is binding on this court. *M.A.P. v. Ryan,* D.C.App., 285 A.2d 310 (1971). Thus, I do not consider *Dameron* (or my colleagues' dicta in this case) to be the final word on the appealability issue.

1. *Pernell v. Southall Realty,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974).

precondition to exercising his right to a hearing: that in which a tenant pleads that he is justified in withholding rent.

The purpose of imposing protective orders is to provide some security to the landlord in the event that he ultimately prevails on the merits. It is not to help landlords avoid a trial on the merits by posing a preliminary obstacle that some tenants will fail to meet, sometimes through no fault of their own. But in imposing a sanction for a tardy proffer of payment under a protective order, it is crucial that the court give the public's—not to mention the tenant's—interest in an opportunity for just resolution of the underlying dispute the substantial weight it deserves. This the plurality fails to do.

If possible, the court should choose a sanction that will not permit the landlord to achieve his objective of eviction, without consideration of its merits, while satisfying his interest in security. In the instant case, there is not the slightest prejudice to the landlord's interest in security. The offer of payment by the tenant before trial puts the landlord in precisely the same position he would have occupied if the installments had been paid on time. This case closely parallels *Trans-Lux,* a case which the plurality strains to avoid. In the *Trans-Lux* situation the landlord's interest in the payment of rent is satisfied when the tenant proffers arrearages and redeems his right to occupancy. In the present case, the relevant interest is not the right to rental payments—that will not be established, if at all, until a trial on the merits—but the right to security for the amount of rent accrued pendente lite. Since the landlord does not have a right to these funds unless and until he succeeds on the merits, this interest is completely satisfied whenever payment is made before trial. .

Moreover, the tenant's countervailing interest is far stronger in the present case

than in the situation where the right of redemption was upheld. In *Trans-Lux,* the tenant had already been adjudicated to be delinquent in his payments, without adequate defense. The liability for rent was thus fixed; the tenant's only interest was in retaining occupancy of the premises. In the instant case there is a possibility that the tenant is entitled to a partial or complete abatement of rent, as well as a right to continued occupancy. But much more fundamentally, the right to an opportunity to be heard is at stake. We need not reach the question of whether under the circumstances of this case striking the pleadings resulted in a denial of due process. It suffices to recognize that when a tenant proffers full payment of the amount covered by a protective order before trial, it constitutes an abuse of discretion to deny him a hearing on the merits.

The landlord contends that if cases are allowed to go to trial when tenants make late payments, there will be no incentive for tenants to comply with protective orders in a timely manner. Maintaining respect for the orders of the court is indeed a legitimate concern. But unjustified delinquency can be punished without permitting a landlord to evict without a hearing on the justification for ejectment. An appropriate fine for contempt may be levied, with due consideration given to mitigating circumstance that may have interfered with timely compliance. D.C.Code 1981, § 11–944. *See Bolden v. Bolden,* D.C.App., 376 A.2d 430 (1977). Costs incurred in seeking compliance could be awarded. *See* Super.Ct. L & T R. 15. The plurality, however, quickly dismisses the possibility of alternative sanctions in a footnote.[2] Indeed, not content to hold that striking pleadings was *permissible* in this case, the opinion goes on to express an alarming *preference* for summary disposition of such cases.[3]

---

2. Plurality opinion, note 9, *supra.*

3. "We conclude that the striking of the tenant's pleadings and the entry of judgment for the

landlord is an appropriate sanction for a trial court to impose in the exercise of its equity power . . . ." Plurality opinion at 827, *supra.*

The fact that there are superior alternatives in the present case does not imply that there are no circumstances under which a default judgment could be ordered for failure to comply with a protective order. If the tenant fails to proffer payment at the enforcement hearing, and does not show cause why immediate payment should be excused, entry of judgment is justified. It is also conceivable that, under extreme circumstances indicating contempt for the process of the court, a default might be entered even when the tenant makes a proffer of payment.

This court has said that the usual right of redemption is not available where the tenant's default is "wilful, deliberate or intentional." *Molyneaux v. Town House, Inc.,* D.C.App., 195 A.2d 744, 747 (1963), citing *Smith v. Warren Petroleum Corp., supra* at 153; *Trans-Lux Radio City Corp., supra.* The same exception should be applied in the case of late payments under a protective order. But of course not every failure to pay on time constitutes "deliberate" default, or the exception would swallow the rule. In *Molyneaux,* for example, the grant of a stay of execution for possession was upheld although there were substantial arrearages and the landlords had made repeated demands. The necessary level of wilfulness might be established if the tenant offers no reason for his tardiness in making payments under a lease or protective order, or when the explanation offered is shown by the landlord to be false. Such was the situation in *Smith v. Warren Petroleum Corp., supra,* where the refusal to accept tender of past due utility payments was upheld.[4]

Suffice it to say that no such circumstances have been shown in the instant case. At the time of the hearing, only three installments remained unmet and the tenant offered to satisfy them on the spot. She testified that the failure to pay on time was due to large and unforeseen medical bills incurred because of an injury caused by the landlord's failure to maintain the premises in a tenantable condition. The landlord failed to show otherwise. While it may be regrettable that the tenant did not consult earlier with her appointed attorney and move to extend the time for payment, this is hardly a ground for the most extreme sanction that can be imposed on a litigant—a default judgment.

In the next to last section of its opinion, the plurality attempts to mitigate the harshness of the result by indicating that a separate action for refund of rent could be brought, though not on the Landlord & Tenant Division's usual expedited basis. However, the objects of the tenant's claims and defenses, in addition to obtaining recompense for any housing violations, are to have them corrected and to remain in her apartment. The possibility of a separate suit for damages therefore does not negate the injustice of summary entry of judgment on the issue of possession. Moreover, given the availability of such an action, it is evident that the court's principal holding entails a waste of judicial resources.

The significance of today's decision has little to do with the reasons offered in support of it. The landlord's security is not affected by it, since the tenant has offered

---

4.     Although that principle [the right of redemption] is well established in this jurisdiction and is entitled to liberal application, it does not mean that a tenant may intentionally and deliberately ignore his obligation to pay until brought into court, and then demand that he be allowed to escape the consequences of his acts by a belated payment of that which should have been paid in accordance with the terms of his lease. Relief from forfeiture of a lease rests upon equitable grounds, and refusal to grant equitable relief to a tenant who has deliberately breached a covenant of his lease is within the sound discretion of the trial court. We see no abuse of discretion in this case.

The tenant admitted his obligation to pay the utility bills, admitted regularly receiving them, admitted he had in no way questioned the correctness of them, admitted he had paid no part of them, and offered no excuse for his failure to pay. The trial court found no basis for granting equitable relief and neither do we. [*Id.* at 153.]

This situation is quite different from that which the trial court faced in the instant case, as the next paragraph in the text indicates.

to satisfy the protective order before trial. The judiciary's institutional interest in respect for court orders is not advanced significantly, since adequate yet non-draconian alternative sanctions are available in the event of egregious behavior. Of course, the court's decision will have important consequences for some tenants. It falls most harshly on those of the most modest means, who will have the greatest difficulty keeping up with payments due under a protective order. But the poor tenant whose claim or defense is unmeritorious will not be worse off in the end, since he would in any event lose the amount covered by the order as well as the right of occupancy. The principal effect is thus to permit unfair enrichment of a landlord at the expense of an indigent tenant with a meritorious defense, by denying him the opportunity to show the justness of his cause.

I cannot join in bringing about such a deplorable result.[5]

KELLY, Associate Judge, with whom MACK, Associate Judge, joins, dissenting:

For the reasons stated in *Davis v. Rental Associates,* D.C.App., 431 A.2d 23 (1981), I would reverse the judgment on appeal on the ground that it was an abuse of discretion not to vacate the judgment of default and proceed to a hearing on the merits.

---

5. I share the views expressed by Judge Ferren in Part II of his separate opinion.