**Katie BATTLE, Appellant,**

v.

**Thomas K. NASH, Appellee.**

**Nos. 82–338, 82–985 and 82–986.**

District of Columbia Court of Appeals.

Argued Oct. 5, 1983.

Decided Dec. 29, 1983.

Michael S. Bernstein, Washington, D.C., with whom David K. Flynn, Washington, D.C., was on the brief, for appellant. Jane M. Kramer, Washington, D.C., also entered an appearance for appellant.

Philip M. Musolino, Washington, D.C., with whom Kenneth J. Loewinger, Washington, D.C., was on the brief, for appellee.

Before TERRY and ROGERS, Associate Judges, and PAIR, Associate Judge, Retired.

TERRY, Associate Judge:

In this landlord-tenant action for possession of certain real estate for non-payment of rent, the tenant asks us to reverse two orders of the trial court. The first granted the motion of the landlord to strike the tenant's pleadings and enter judgment against her because of her failure to comply with a protective order. The second disbursed to the landlord the funds which the tenant had paid into the court registry under that protective order. Because we conclude that the trial court erred in hearing and granting the landlord's motion to strike the tenant's pleadings and enter judgment, we reverse both orders.

Appellee brought this action on February 13, 1981, alleging appellant's failure to pay

rent due on February 1. Appellant's answer set up defenses and counterclaims based on alleged violations of the local housing code and rent control law. The case went to trial in July 1981 before Judge Nunzio. During the course of the proceedings, however, the judge declared a mistrial after a disagreement with appellant's counsel (not her present counsel) and thereupon recused himself from all cases in which that particular attorney was involved. Thereafter the case was not retried, owing at least in part to Judge Nunzio's lengthy tour of duty in the Landlord and Tenant Branch.

On March 10, 1981, the court had entered a protective order directing appellant to pay $295 into the registry of the court within a week, and by the 23rd of each month thereafter.[1] Inadvertently, appellant made two such payments in March, and as a result she was a month ahead in her payments for a period of several months. Not realizing her error, she moved on November 24 to enlarge the time in which to make the November 23 payment, which in fact she had made in October. That motion was apparently never ruled upon by the court. However, after appellant failed to make the December and January payments and failed to move for an extension of time in which to make them, appellee filed a motion to strike appellant's pleadings and enter judgment against her. Judge Murphy granted that motion on February 4, 1982, but vacated it two weeks later after appellant paid the overdue amounts into the registry.

In February appellant failed once again to make her monthly payment on time, and on February 26 she moved for an enlargement to March 8 within which to do so. On March 9 she moved for a further enlargement, claiming that a payroll mixup had left her with only half of her normal paycheck. Unaware of this new motion, Judge Norman on March 11 heard and granted appellee's oral motion to strike appellant's pleadings and enter judgment. On March

1. *See Bell v. Tsintolas Realty Co.,* 139 U.S.App. D.C. 101, 430 F.2d 474 (1970).

19 the judge vacated his order, directing appellant to make her February payment that day. She did so the next morning.

On March 23 appellant moved for a waiver of the March payment or, alternatively, an enlargement of the time in which to make it. Judge Norman denied this motion at a hearing on March 29. At the same hearing, appellee again moved orally that the court strike appellant's pleadings and enter judgment against her. The judge granted this motion, and appellant filed a notice of appeal. Thereafter appellee moved for disbursement of the protective-order funds. At the hearing which followed, appellant contended that, having raised a claim of housing-code violations, she was entitled under *McNeal v. Habib,* 346 A.2d 508 (D.C.1975), to assert them in an evidentiary hearing before the court could disburse the funds to appellee. Judge Hannon rejected appellant's argument, holding that since her pleadings had been stricken, she could not assert any alleged housing-code violations in a *McNeal* hearing, and that therefore no hearing was necessary. The judge then disbursed the funds to appellee. Appellant filed a second notice of appeal.[2]

Appellant seeks reversal of the orders striking her pleadings and disbursing the protective-order funds. She argues, first, that in allowing appellee to move orally to strike her pleadings and in hearing argument on the motion immediately, the trial court violated Super.Ct. L & T R. 13; second, that the trial court failed to consider the factors which, under *Davis v. Rental Associates, Inc.,* 456 A.2d 820 (D.C. 1983) (en banc), must be examined in ruling upon a motion to strike a tenant's pleadings for non-compliance with a protective order; and third, that she was entitled to present her defenses and counterclaims in a *McNeal* hearing before the court disbursed the protective-order funds. We hold that each of the first two contentions has merit and

reverse both of the trial court's orders; we therefore do not consider appellant's third argument, although recent case law suggests that it too is meritorious.[3]

"Proceedings in the Landlord and Tenant Branch are of a summary nature, and time is of the essence." *Mahdi v. Poretsky Management, Inc.,* 433 A.2d 1085, 1088 (D.C. 1981). However, not every motion that may be filed in a landlord-tenant proceeding is suited to the branch's summary procedure. For this reason Super.Ct. L & T R. 13(a) provides:

> When any motion cognizable in this branch is dependent upon facts not apparent upon the record, said motion shall be in writing and shall be accompanied by an affidavit or sworn testimony of the movant, his agent, or some other competent person, setting forth fully the facts upon which said motion is based.

Such a motion "shall be heard not earlier than the fifth day after service of the motion ...." Super.Ct. L & T R. 13(c). Rule 13 thus creates an exception to the usual speedy procedure in the Landlord and Tenant Branch: when the court must look beyond the bare record, the rule puts on the brakes. The requirement of a written motion and the five-day pause protect the opposing party from surprise and enable the court to give more than the usual, necessarily cursory, attention to an issue which demands it.

■ This court has never addressed the question of whether Rule 13 applies to a motion to strike a tenant's pleadings for failure to comply with a protective order. However, our recent decision in *Davis v. Rental Associates, Inc., supra,* leads us to conclude that it must. In *Davis* we held that, in ruling on such a motion, the trial court must consider the extent of the tenant's non-compliance with the protective order and the reasons for that non-compliance, as well as the landlord's right to be free from governmental takings without

---

**2.** There are actually three appeals before us. The third one, however, is merely duplicative of the first two.

**3.** See note 6, *infra.*

just compensation. 456 A.2d at 826–827. Discussing the second factor (the reasons for non-compliance), Judge Kern wrote in the plurality opinion:

> Where a tenant has made good faith efforts to inform the court of an inability to make a timely payment, or to make a full payment due to extraordinary financial setbacks, the court may, in its discretion, permit a tenant to make a late payment or to make a payment of less than the full amount rather than enter judgment for the landlord.

*Id.* at 826.

This second factor requires the court to take into account exactly the sort of facts to which Rule 13 refers. If, for example, the non-complying tenant has not sought an enlargement of time in which to make protective-order payments, the reasons for such non-compliance would not usually be apparent on the record. Even if they were, the court would not be presented with facts of the sort justifying summary action. Were a motion to strike pleadings and enter judgment dependent solely on whether the tenant had in fact made payment, Rule 13 probably would not apply; that fact can be ascertained with reasonable certainty from a look at the record. But *Davis* compels a court to consider what Rule 13 characterizes as "facts not apparent upon the record," such as "inability to make a timely payment, or to make a full payment due to extraordinary financial setbacks ...." Therefore, Rule 13 demanded in this case that appellee's motion to strike appellant's pleadings and enter judgment against her be in writing, and that the hearing on the

motion take place no sooner than the fifth day after its service on appellant.[4]

Appellee moved to strike appellant's pleadings at the March 29 hearing on appellant's motion to enlarge the time in which to make her monthly payment; the court quickly granted appellee's motion. Neither requirement of Rule 13 was met. First, the motion was oral; second, probably not even five minutes, let alone five days, elapsed between the making of the motion and its granting. Even to entertain the motion was error, and the record demonstrates that the court erred again in granting it.

■ As we have said, *Davis* establishes that a court must consider the reason for a tenant's non-compliance with a protective order. 456 A.2d at 827. Responding to appellee's oral motion to strike appellant's pleadings, appellant's counsel sought primarily to have the trial held immediately. But when he started to explain appellant's failure to make the March payment, the court cut him off. When appellee's counsel balked at the suggestion of an immediate trial, the court entered judgment for appellee. At no time did the court hear anything concerning appellant's reasons for non-compliance. Even if Rule 13 had not applied, therefore, we would be compelled by *Davis* to set aside the judgment.[5]

Accordingly, we reverse the order striking appellant's pleadings and entering judgment against her. Since that order was the sole basis for the trial court's ruling denying appellant a *McNeal* hearing, we must also reverse the order disbursing the funds to appellee.[6] We remand this case to the

---

4. Appellee contends that the rule applies only in cases in which the motion itself, not the court's ruling, depends upon facts not disclosed by the record. Since his motion alleged only a failure to make the March payment under the protective order, appellee reasons, it did not fall within the scope of Rule 13. This interpretation is inconsistent with the rule's obvious purpose, for it would mean that, even though the non-movant is entitled to allege facts not in the record in opposition to the motion, he or she is not entitled to any notice before argument is heard. So to hold would make the rule a nullity.

5. In fairness to the trial court, we note that *Davis,* which was decided almost a year after the court struck appellant's pleadings, was the first decision from this court to state clear guidelines on the subject of what a trial court must consider in ruling on a motion to strike a tenant's pleadings for failure to comply with a protective order.

6. We do so without reaching the question of whether appellant would have been entitled to a *McNeal* hearing if her pleadings had been stricken correctly. However, in the event that the issue arises again on remand, we call to the

**1256**

Landlord and Tenant Branch for further proceedings on the merits, and for entry of an appropriate order to ensure that the money paid to appellee out of the registry of the court is secured pending final disposition of the complaint for possession. We leave it to the trial court, in its discretion, to frame the terms of such an order.

*Reversed and remanded.*

trial court's attention our recent decisions in *Goodwin v. Barnes,* 456 A.2d 1246 (D.C.1983), and *Smith v. Interstate General Corp.,* 462 A.2d 1133 (D.C.1983). In *Goodwin* we held that a *McNeal* hearing was required even though the underlying possessory action had become moot, and in *Smith* we pointed out that "[t]he distribution of the funds in the registry was the concluding stage of a separate and distinct equitable proceeding, not part of the underlying possessory action." *Id.* at 1134.