**Dorothy McNEAL, Appellant,**

v.

**Nathan HABIB, Appellee.**

**No. 7240.**

District of Columbia Court of Appeals.

Submitted Nov. 28, 1973.

Decided Oct. 13, 1975.

Rehearing and Rehearing en Banc Denied Dec. 2, 1975.

---

Edward E. Schwab and Jerome Morris, Washington, D. C., were on the briefs for appellant.

Herman Miller, Washington, D. C., was on the brief for appellee.

Before NEBEKER, YEAGLEY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

This appeal from the Landlord and Tenant Branch of the Civil Division of the Superior Court challenges an order directing that $105, which had been paid into the registry of the court by a tenant pursuant to a protective order, be disbursed to the landlord. No evidentiary hearing was held prior to the entry of either order. We reverse.

I

Appellee Habib, the landlord, gave his tenant at sufferance, appellant McNeal, a 30-day notice to quit pursuant to D.C.Code 1973, § 45–902. When the tenant did not leave upon the expiration of the 30 days, the landlord used that fact as the basis for filing a complaint for possession of the premises. Although the landlord effected personal service, he made no claim for rent due, thereby limiting the defenses available to the tenant.[1]

■ In the Landlord and Tenant Branch, trial is set for the return date specified in the summons. Super.Ct. L & T R. 7(c). On the return date, both parties appeared in court. The tenant then filed an answer, which (1) asserted defenses of retaliatory eviction and housing code violations, and (2) demanded a jury trial.[2] See Super.Ct. L & T. R. 6. Trial was scheduled for six weeks later.

The landlord then made an oral motion for a protective order to require the tenant to make monthly payments (equal to the accruing rental) into the registry of the court pending resolution of the case. The court heard argument from counsel for each party, and granted the motion.[3]

The tenant complied with that order. However, shortly before trial, she voluntarily surrendered possession of the premises, thereby mooting the possessory action. The case then came on for a hearing as to the proper disposition of the $105—equivalent to one month's rent—which appellant had paid into the court registry pursuant to the protective order. The tenant argued that all of the money should be returned to her under *Bell v. Tsintolas Realty Co.*, 139 U.S.App.D.C. 101, 112, 430 F.2d 474, 485 (1970), or alternatively that the court

---

1. *See* Super.Ct. L&T R. 3 and 5.

2. Normally a defense of housing code violations would be irrelevant in a possessory action based solely upon a valid 30-day notice to quit.

3. Appellant sought to include the transcript of that hearing in the record on appeal. However, the tape recorder in the courtroom performed inadequately during the hearing. Our knowledge of the details of what transpired accordingly is limited.

should hold an evidentiary hearing and determine what portion of the payment should be abated due to alleged housing code violations. *See Javins v. First National Realty Corp.,* 138 U.S.App.D.C. 369, 428 F.2d 1071, *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970). Declining to adopt either of those two alternatives, the court ordered the money paid to the landlord.[4]

There are two prongs to appellant's argument. First, since the protective order was entered on the return date in response to an oral motion, she contends that the order was invalid because it was entered in alleged disregard both of the requirements of Super.Ct. L & T R. 13 and of the recommended procedures discussed in *Bell v. Tsintolas Realty Co., supra.*[5] Second, she argues that disbursement of the funds to the landlord without an evidentiary hearing would violate *Bell* and the due process clause of the Fifth Amendment.

## II

■ When the landlord chose to rely upon the expiration of the 30-day notice to quit in instituting his possessory action (rather than upon the apparently unpaid past rent), he waived his right to claim rental arrearages in the proceeding. Similarly, he could not have amended his complaint to assert a claim for rent due, although he was free to seek recovery of back rent in a separate action. *See Paregol v. Smith,* D.C.Mun.App., 103 A.2d 576,

578 (1954); *see also Mahoney v. Campbell,* D.C.App., 209 A.2d 791, 794 (1965). Additionally, the type of complaint which was filed operated to curtail the number of defenses available to the tenant.[6]

For the past several years, the caseload in the Landlord and Tenant Branch has been approximately 120,000 cases annually. Consistent with the demands imposed by that high volume, Super.Ct. L & T R. 1 provides that possessory actions are to be handled in summary fashion. Generally, a suit for possession is disposed of on the return date. When the tenant asserted defenses and demanded a trial, however, delay became a factor. The landlord thus was faced with an additional period of no income from his property and the question of some payment by the tenant for the continued occupancy of the apartment became relevant.

We have noted appellant's reliance upon Rule 13(a), which provides that a motion shall be in writing when it "is dependent upon facts not apparent upon the record". In the Landlord and Tenant Branch, very few cases actually go to trial. Most are disposed of on the return date by dismissals, default judgments, or judgments by confession (with the tenant agreeing to pay back rent according to a formula negotiated with the landlord). Until the return date, a landlord has no knowledge as to whether the seeking of a protective order might become appropriate, and the statistical likelihood is that it will not. To require a separate written motion for a pro-

---

4. The court stayed the effectiveness of its order for 10 days to permit the tenant to file an action in the Small Claims Branch for a return of all or part of the money.

5. Rule 13 provides in pertinent part as follows:

    (a) *In General.* When any motion cognizable in this branch is dependent upon facts not apparent upon the record, said motion shall be in writing and shall be accompanied by an affidavit or sworn testimony of the movant, his agent, or some other competent person, setting out fully the facts upon which said motion is based.

. . . . .

    (c) *Time of Hearing.* Motions filed in this branch shall be heard not earlier than the fifth day after service of the motion, whether served by hand or by mail.

6. *See* Super.Ct. L&T R. 5(b). The defense of retaliatory eviction, while not included in Rule 5, was sanctioned by the United States Court of Appeals in *Edwards v. Habib,* 130 U.S.App.D.C. 126, 138–40, 397 F.2d 687, 699–701 (1968), *cert. denied,* 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969).

tective order needlessly would clog the judicial machinery, leading either to the early filing of pro forma motions (most of which would become moot), or to an additional later appearance in court by the parties if a defendant demands a trial.

■ The landlord made the oral motion for a protective order as soon as he perceived a need therefor. The parties then were present in court. The relevant facts were not in dispute.[7] The court readily was in a position to exercise its equity powers, giving consideration to the contentions of the opposing parties.[8]

In *Bell v. Tsintolas Realty Co., supra,* the United States Court of Appeals sustained the trial court's equitable authority to impose a protective order "to avoid placing one party at a severe disadvantage during the period of litigation." 139 U.S. App.D.C. at 109, 430 F.2d at 482 (footnote omitted). While much that was said in the *Bell* opinion constituted dicta which went considerably beyond the narrow issues presented, we share the following thought expressed therein:

> [N]ormally, the burden of such a prepayment order on the tenant will be neither heavy nor unexpected: to require that the tenant meet current rental payments during the litigation period is to require only that he fulfill an obligation which he voluntarily assumed at an earlier date when he entered into the lease. *Ibid.*

While the *Bell* court spoke of "the prepayment of rent requirement as a method of protecting the landlord", *ibid.,* the benefits to tenants should not be overlooked. First, as to the tenant who is a defendant, payments made into the registry of the court pending litigation protect his ability to satisfy his housing needs, in that such payments prevent a tenant from falling further in arrears. *See generally National Capital Housing Authority v. Douglas,* D. C.App., 333 A.2d 55 (1975). Second, a defendant's fellow tenants merit the law's consideration. To the extent that one tenant pays no rent for the use of particular premises, he (1) may make it financially impossible for his landlord to make needed repairs, and (2) heightens the landlord's need to increase rental charges to the paying tenants to compensate for the lost income. These consequences hardly are fair to those tenants who honor their contractual commitments.

■■ If all trials in possessory actions could be held on the return date, there would be no need for protective orders. Obviously, however, that is an impossibility. In order for the court to proceed in any fashion other than a dismissal on the return date, the tenant must have been served properly, thereby receiving notice of the originally set trial date. Considering all of the relevant factors, we conclude that Rule 13 is inapplicable to a motion for a protective order made orally on the return date in a possessory action.[9]

---

7. In *Lindsey v. Normet,* 405 U.S. 56, 65, 92 S.Ct. 862, 869, 31 L.Ed.2d 36 (1972), the Supreme Court stated:
   Tenants would appear to have as much access to relevant facts as their landlord, and they can be expected to know the terms of their lease, whether they have paid their rent, whether they are in possession of the premises, and whether they have received a proper notice to quit, if one is necessary.

8. In an appropriate case, the interests of justice might call for a continuance for a hearing on a motion for a protective order. *Cf. Lindsey v. Normet, supra* at 65, 92 S.Ct. 862. Normally, however, protective order con-

siderations could be resolved on the return date.

9. *Cf. Amberger & Wohlfarth, Inc. v. District of Columbia,* D.C.App., 300 A.2d 460, 462–63 n. 3 (1973). Our concern there was with an oral motion which effectively went to the underlying merits of the litigation.
   We note also that oral motions for stays by tenants facing eviction are not uncommon in the Landlord and Tenant Branch. If we were to hold Rule 13's requirement of a written motion to be applicable to requests for a protective order, assuredly such a ruling would have to be extended to requests for stays of writs of restitution. While we sanction an

In *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), the Supreme Court was faced with a constitutional challenge to Oregon's statute establishing procedures for possessory actions.[10] The Court upheld those portions of the statute which (1) require trial within six days after service of the complaint unless the tenant provides security in the amount of the accruing rent, and (2) provide for a limitation of the triable issues, precluding a defense based on the landlord's breach of duty to maintain the premises. The Court stated in part (*id.* at 65, 92 S.Ct. at 870): "A requirement that the tenant pay or provide for the payment of rent during the continuance of the action is hardly irrational or oppressive." The Court made the following observations as to the nature of the landlord-tenant relationship (*id.* at 72–73, 92 S.Ct. at 873–874):

> There are unique factual and legal characteristics of the landlord-tenant relationship that justify special statutory treatment inapplicable to other litigants. The tenant is, by definition, in possession of the property of the landlord; unless a judicially supervised mechanism is provided for what would otherwise be swift repossession by the landlord himself, the tenant would be able to deny the landlord the rights of income incident to ownership by refusing to pay rent and by preventing sale or rental to someone else. Many expenses of the landlord continue to accrue whether a tenant pays his rent or not. Speedy adjudication is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession * * *. Holding over by

the tenant beyond the term of his agreement or holding without payment of rent has proved a virulent source of friction and dispute. We think Oregon was well within its constitutional powers in providing for rapid and peaceful settlement of these disputes.

Also raised in *Lindsey v. Normet* was an equal protection challenge to the Oregon statutory scheme. With respect thereto, the Court concluded (*id.* at 74, 92 S.Ct. at 874):

> We do not denigrate the importance of decent, safe, and sanitary housing. But the Constitution does not provide judicial remedies for every social and economic ill. We are unable to perceive in that document any constitutional guarantee of access to dwellings of a particular quality, or any recognition of the right of a tenant to occupy the real property of his landlord beyond the term of his lease without the payment of rent or otherwise contrary to the terms of the relevant agreement. Absent constitutional mandate, the assurance of adequate housing and the definition of landlord-tenant relationships are legislative, not judicial, functions. Nor should we forget that the Constitution expressly protects against confiscation of private property or the income therefrom.

■■ While there are certain practical distinctions between the overall Oregon procedures and those which are in effect here, we interpret *Lindsey v. Normet* as authority for the proposition that the due process clause does not require an evidentiary hearing prior to the entry of a protective order.[11] Certainly, however, a ten-

---

oral motion for a stay by a tenant, absent extraordinary circumstances a landlord should have notice of such a motion and an opportunity to be heard before the trial court rules thereon.

10. The case arose when tenants initiated a class action seeking a declaratory judgment that the Oregon Forcible Entry and Wrongful Detainer Statute was unconstitutional.

11. Under the Oregon system, for example, not only is the landlord precluded from claiming back rent against a nonpaying tenant, but also the "tenant is barred from raising claims in the [possessory] action that the landlord has failed to maintain the premises . . . ." *Lindsey v. Normet, supra* at 65–66, 92 S.Ct. at 870. Any such claim by a tenant in Oregon must be litigated separately in an action for damages. In the District of Colum-

ant (or his counsel) should be afforded an adequate opportunity to be heard as to the equities of a protective order before one is entered.[12] That right having been afforded by the trial court, the entry of the protective order was not flawed.[13]

One corollary aspect of this holding should be stressed. We have noted that a defense of housing code violations is irrelevant to a possessory action based upon a valid 30-day notice to quit (unless raised in the context of a claim of retaliatory eviction). However, when consideration is given to the possible entry of a protective order if a defendant demands a trial on the return date (either jury or nonjury, for each entails a delay), future payments of rent (or perhaps more accurately payments for the continued use or occupancy of the premises, since the landlord seeks to remove the tenant) become involved. At the hearing on a motion for a protective order, allegations of housing code violations would be relevant to the trial court's determination of the amount which should be paid monthly into the registry of the court (i. e., the rental figure or a reduced figure). Also relevant would be any representations to the effect that the tenant has frustrated the landlord's good faith efforts to correct housing code violations, for such a circumstance occurs with regrettable frequency.

## III

While we affirm the entry of the protective order, we reach the opposite conclusion with respect to the trial court's order that the $105 which had been paid into the registry of the court should be disbursed to the landlord with no opportunity for an evidentiary hearing.[14]

In her answer to the complaint, the tenant did assert the existence of housing code violations. While any such defects were irrelevant to the 30-day notice to quit, they may well have significance as to the post-return date payment for the tenant's continued use and occupancy of the premises pending the conclusion of the proceeding. Also of significance would be the length of the period during which the tenant's continued occupancy precluded any other productive use of the premises by the landlord.

We conclude that due process considerations entitle the tenant to present relevant and material evidence as to the extent to which the rental contract figure should be abated—if at all—due to violations of the Housing Regulations which might have existed during her continued use and occupancy of the premises while the protective order was in effect. Only after such a hearing has been held may an order be entered disbursing the funds.[15] That not

---

bia, housing code violations may provide a valid defense in an action for possession based on nonpayment of rent.

12. While the receipt of testimony is not required, in the exercise of its discretion the trial court might conclude that hearing some testimony would be of assistance in determining the amount to be specified in a protective order.

13. Our conclusion on this question is consistent with that portion of *Bell v. Tsintolas Realty Co., supra,* in which the court stated that it is procedurally proper to enter a protective order if it is done "upon motion of landlord and after notice and opportunity for oral argument by both parties." 139 U.S. App.D.C. at 110, 430 F.2d at 483 (footnote omitted).

14. As noted above, the trial court did stay its order to give the tenant an opportunity to file a complaint in the Small Claims Branch, but for the tenant to have done so would have been to give rise unnecessarily to a second legal proceeding.

15. In *Javins v. First National Realty Corp., supra,* 138 U.S.App.D.C. at 381 n. 67, 428 F.2d at 1083 n. 67, the court suggested that "[a]s a general rule, the escrowed money should be apportioned between the landlord and tenant after trial on the basis of the finding of rent actually due for the period at issue in the suit." Six weeks later, the same court expressed the feeling that when a tenant voluntarily surrenders possession prior to trial, the tenant should be refunded the escrowed funds "unless the landlord promptly

having been done, the order directing disbursement of the $105 to the landlord is reversed, and the case is remanded.[16]

*Affirmed in part, reversed in part, and remanded.*

goes to court to seek a money judgment for rent actually due during the period rent was being paid into court." *Bell v. Tsintolas Realty Co., supra,* 139 U.S.App.D.C. at 112, 430 F.2d at 485.

In *Bell,* no issue was presented as to the disbursement of escrowed funds, nor was any apparent consideration given to how long a tenant might have occupied the premises before surrendering them. The court's comments were dicta, in the nature of an advisory opinion, not giving rise to the principle of deference to pre-court reorganization opinions of the Circuit Court expressed in *M.A.P. v. Ryan,* D.C.App., 285 A.2d 310 (1971). If the court meant to suggest that an additional complaint would have to be filed in another branch of the trial court, we respectfully would disagree. The parties and the money already are before the court; it would be pointless to call for instituting a new proceeding as a means of concluding the exististing one.

16. The monies paid pursuant to a protective order normally would be expected to be relatively small, and settlement agreements between the parties may obviate the need for evidentiary hearings in most cases. If opposing counsel formally agree on the disbursement of the money, we see no need for a judicial order to obtain a release of the escrowed funds.