Margaret ADAMS, et al., Appellants,

v.

JONATHAN WOODNER COMPANY,
**Appellee.**

No. 81–239.

District of Columbia Court of Appeals.

Argued Aug. 17, 1983.
Decided April 19, 1984.

Charles D. Stodghill, Washington, D.C., for appellants.

Arthur D. McKey, Washington, D.C., with whom Pamela J. Brown, Washington, D.C., was on the brief for appellee.

Before MACK and TERRY, Associate Judges, and YEAGLEY, Associate Judge, Retired.

YEAGLEY, Associate Judge, Retired:

In June 1979, appellee, the Jonathan Woodner Company, filed individual suits against appellants for possession of units they occupied at 2440 16th Street, N.W., the Park Towers Apartments. Appellants, members of the Park Towers Tenants Association, had ceased paying rent in May 1979 because of the alleged existence of housing code violations and a reduction in managerial services. Shortly after Woodner brought its suits for possession, appellants began paying monthly rent into the registry of the court pursuant to the trial court's entry of a protective order.

Approximately two weeks after the suits for possession were commenced, the Tenants Association filed a petition with the District of Columbia Rental Accommodations Office (RAO) in which it challenged a rent increase that was implemented in May 1978 while the building was allegedly in violation of District of Columbia Housing Regulations. The Association also argued to RAO that its members were entitled to a rollback in rent as a result of Woodner's reduction in managerial services at Park Towers to a level below that required by the lease agreements. This action was, of course, distinct from Woodner's suits for possession brought in the Landlord and Tenant Division of the Superior Court.

In answering the suits for possession, appellants asserted that Woodner was in breach of the implied warranty of habitability because of its failure to remedy significant violations of housing regulations. Appellants also counterclaimed for damages resulting from this alleged breach. In August 1979, the cases were consolidated for trial.

Following a hearing on the Tenants Association's RAO petition, the Rent Administrator issued a decision in August 1980, in which he awarded a five percent abatement in rent from May 1978 until Woodner restored the reduced services and remedied violations of the Housing Regulations. The award was trebled, and Woodner was also ordered to cease and desist from any retaliatory actions. The Administrator found that although housing code violations did not exist when rents were increased in 1978, they did develop during 1979. He also found that Woodner had decreased managerial services and had engaged in retaliatory actions against members of the Association. Both parties appealed the decision to the Rental Accommodations Commission.

While the appeals to the Commission were pending, Woodner filed a motion for partial summary judgment challenging appellants' counterclaims. It asserted both that RAO had primary or exclusive jurisdiction to determine the issues raised by the counterclaims and that the decision of the RAO precluded recovery by appellants under the theory of collateral estoppel. The trial court agreed with Woodner's latter argument and on November 26, 1980, issued an order dismissing the counterclaims. Shortly thereafter, the trial court granted Woodner's motion to voluntarily dismiss its suits for possession with prejudice. Rents paid into the court registry pursuant to the protective order of July 16, 1979, were ordered released to Woodner.[1] Appellants now appeal from those orders.

---

1. In March 1981, the trial court stayed the order to release the funds pending the outcome of this appeal. The stay, however, was terminated on

During the pendency of this appeal, on July 27, 1981, the Rental Accommodations Commission issued a decision reversing the Rent Administrator's ruling of August 29, 1980. The matter was remanded to the Rent Administrator for new findings on all issues, including those that had been deemed "finally determined" by the trial court when it dismissed appellants' counterclaims. The petition was subsequently dismissed without prejudice pursuant to the Tenants Association's motion.

Appellants contend that the Commission's reversal of the Rent Administrator's decision requires reversal of the court's entry of summary judgment against their counterclaims. They argue that the premise of the trial court's ruling, collateral estoppel, is invalid in view of the reversal of the judgment upon which the court relied in applying that doctrine. Woodner, on the other hand, urges affirmance of the summary judgment disposition, contending that reversal of the Rent Administrator's decision should not invalidate the trial court's use of collateral estoppel to resolve the issues of whether housing code violations existed and whether appellants were entitled to abatements in rent. We agree with appellants' contention and reverse the trial court's orders granting summary judgment and releasing funds paid into the registry to Woodner.

## I

 Under the doctrine of *res judicata,* a prior judgment on the merits absolutely bars a subsequent suit on the same cause of action. *Goldkind v. Snider Bros., Inc.,* 467 A.2d 468, 473 (D.C.1983) (citations omitted); 1B J. MOORE, W. TAGGART & J. WICKER, MOORE'S FEDERAL PRACTICE § 0.410[1] (2d ed. 1983). The doctrine does not bar a suit on a different cause of action, although, in such a case, the closely related doctrine of collateral estoppel may preclude relitigation of issues that have been "actually litigated and necessarily de-

September 21, 1983, and the funds were released to Woodner.

cided in an earlier proceeding." *Goldkind v. Snider Bros., Inc., supra,* 467 A.2d at 473. Barring relitigation of such issues avoids burdening courts and parties with needless repetition while also eliminating the possibility of inconsistent results that could undermine public confidence in judicial resolution of disputes. *See generally* 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4416 (1981) (hereinafter cited as WRIGHT & MILLER). At the same time, however, the obvious danger of issue preclusion is that the issue may have been incorrectly decided in the first proceeding. *Id.* It is with this danger in mind that we must view the effect of the reversal of a decision upon which the application of collateral estoppel was based. Numerous courts have considered this question.

Appellee places significant reliance on the Supreme Court's decision in *Reed v. Allen,* 286 U.S. 191, 52 S.Ct. 532, 76 L.Ed. 1054 (1932). In *Reed,* which involved a dispute over ownership of property, the trial court in the first action ruled that Allen did not own the property. After Allen had appealed that judgment, petitioners won a second action to recover possession based upon the *res judicata* effects of the first proceeding. *Id.* at 196, 52 S.Ct. at 532. Allen did not appeal the second judgment. The first judgment was thereafter reversed with a finding that Allen owned the property. Allen then brought a third action to gain possession of the property, but the Court ruled that the unappealed *res judicata* -based judgment from the second action was valid and could not be collaterally attacked. *Id.* at 198, 52 S.Ct. at 533. Thus, although Reed had been determined to have no rights in the property, he remained in possession of it. In reaching this disturbing result, the Court suggested that instead of collaterally attacking the second judgment, Allen should have directly attacked it through appeal.[2] *Id.*

2. As the Court pointed out, the appellate court obviously lacked jurisdiction over the second

The Court's suggestion in *Reed* that a different result would have followed if Allen had appealed the second judgment distinguishes that case from the present one. *Reed* only establishes that a decision based upon the *res judicata* effects of a judgment that has since been reversed cannot be collaterally attacked. Here, rather than collaterally attacking the second judgment, in conformance with the course of action suggested in *Reed*, appellants have directly appealed. Appellee's reliance on *Reed* is therefore misplaced.

Appellee also relies on this court's decision in *V.E.M. Hotel Service, Inc. v. Uline, Inc.*, 190 A.2d 812 (D.C.1963), in asserting that the judgment against appellants on their counterclaims should not be disturbed because of reversal of the Rent Administrator's decision. In *V.E.M.*, however, the court merely concluded that a judgment is not deprived of its *res judicata* effect merely because it has been appealed. *Id.* at 813–14. In doing so, relying on *Reed*, the court commented in *dicta* that "where a judgment in one case has been made the basis for a judgment in a second case, the second judgment will stand as *res judicata* although the first judgment be subsequently reversed." *Id.* at 813. Despite this comment, the court in *V.E.M.* was not presented with that issue. As we have attempted to make clear, *Reed* does not control where, as here, the *res judicata*-based decision has been directly appealed rather than collaterally attacked. Thus, we decline to construe *Reed* as broadly as this court did in its *dicta* comment, and *V.E.M.* does not control this appeal.

■ Turning to the merits of the issue, we are persuaded that a judgment based upon collateral estoppel or *res judicata* is no longer valid when the decision upon which the court relied in applying either of the doctrines has been reversed. Reversal of a decision renders it invalid, and application of collateral estoppel clearly should not

be based upon an invalid decision. *See Butler v. Eaton*, 141 U.S. 240, 11 S.Ct. 985, 35 L.Ed. 713 (1891) (foundation for application of *res judicata* is subverted and rendered void by reversal of earlier judgment); *Ornellas v. Oakley*, 618 F.2d 1351 (9th Cir.1980) (reversed or dismissed judgment cannot be a basis for a disposition on the ground of *res judicata* or collateral estoppel); *Int'l Tel. & Tel. Corp. v. Gen. Tel. & Electronics Corp.*, 527 F.2d 1162 (4th Cir. 1975) (reversal of judgment that served as basis for *res judicata* requires reversal of later *res judicata*-based judgment); *Di Gaetano v. Texas*, 300 F.2d 895 (3d Cir. 1962) (reversal of prior judgment relied upon by the trial court causes defense of collateral estoppel to evaporate); *see also* 18 WRIGHT & MILLER, *supra*, § 4433 at 311–13.

■ As we have noted, barring relitigation of issues avoids burdening courts and parties with needless repetition, but there is often present the danger that the issues may have been incorrectly decided in the first proceeding. There can be no clearer indication of the presence of that danger than appellate reversal of the earlier judgment. In this case, for example, in reversing the Rent Administrator's decision, the Commission stated that the evidence was insufficient to support the administrator's findings concerning the existence of housing code violations. It would clearly be illogical for us to allow those findings to determine the outcome of a second action when an appellate body has concluded they were erroneous. Thus, relitigation of the issues is required. The interest in avoiding needless relitigation is not paramount here, and the doctrine of collateral estoppel does not apply. Accordingly, the trial court's order granting summary judgment is reversed, and the case is remanded for a trial on the merits of appellants' counterclaims.

judgment because of Allen's failure to appeal. It was, therefore, without power to reverse that

judgment after its reversal of the first judgment.

**398**

## II

 Appellants contend further that reversal of the trial court's order granting summary judgment necessarily requires reversal of the order releasing funds from the registry to Woodner. One of the purposes of protective orders requiring payment of rent into a registry is to provide "a fund from which the tenant may receive an abatement if housing code violations warranting an abatement are indeed found." *Dameron v. Capitol House Associates, Ltd.*, 431 A.2d 580, 584 (D.C.1981). In *McNeal v. Habib*, 346 A.2d 508, 514 (D.C. 1975), we held that due process considerations entitle a tenant to an evidentiary hearing to determine whether an abatement in rent is warranted due to housing code violations that may have existed during a tenant's occupancy of premises while a protective order was in effect. An order disbursing the funds may be entered "[o]nly after such a hearing has been held." *Id.*

In this case, the trial judge entered an order releasing registry funds to Woodner after granting Woodner's motion for partial summary judgment and voluntarily dismissing its suits for possession. While our holding in *McNeal* would appear to require an evidentiary hearing after dismissal of the possession suits to determine the party's entitlement to registry funds, in *Dameron v. Capitol House Associates, Ltd., supra*, 431 A.2d at 583, we held that such a hearing is unnecessary when the rights of the parties to receive funds paid into the registry were determined in a prior action for possession. Here, with the issue of housing code violations having been determined in the prior proceeding before the Rent Administrator, the trial judge apparently was of the view that the parties' rights to the registry funds were settled and that a *McNeal* hearing to consider abatement for housing code violations would have been repetitious. In effect, the Rent Administrator's resolution of housing code violations issues served to collaterally estop appellants from asserting entitlement to abatements at a *McNeal* hearing. But, as we held in the first part of this opinion, the Rent Administrator's reversed decision cannot be used for collateral estoppel purposes. Accordingly, the trial court's order releasing registry funds to Woodner is reversed. The parties' rights to these funds can be determined only after final resolution of appellants' counterclaims and the allegations of housing code violations.

Once a judgment is reversed, an appellant is "entitled to restitution of anything taken and held under the judgment." *Quick v. Paregol*, 68 A.2d 211, 214 (D.C. 1949). The trial court's disbursement order deprived appellants of a fund from which they could receive an abatement in the event that housing code violations were found. In accordance with our reversal of that order, Woodner is ordered to return all registry funds that it received to the court registry.

The trial court's orders granting partial summary judgment and releasing registry funds are reversed, and the case is remanded for a trial on the merits of appellants' counterclaims.

*So ordered.*