**Debra CUNNINGHAM, Appellant,**

v.

**PHOENIX MANAGEMENT,
INC., Appellee.**

**Nos. 85–1037, 86–1306.**

District of Columbia Court of Appeals.

Argued Sept. 8, 1986.

Decided April 20, 1988.

Richard J. Hyland, with whom Michael O. De Mouy and John C. Schaible, Wash-

---

ington, D.C., were on the brief, for appellant.

Michael E. Brand, with whom Rena Schild and Kenneth Loewinger, Washington, D.C., were on the brief, for appellee.

Before NEWMAN, FERREN and BELSON, Associate Judges.

NEWMAN, Associate Judge:

In this case, we are required to decide whether, in a landlord and tenant suit for possession of realty based on a notice to quit rather than on grounds of nonpayment of rent, a landlord can obtain a court order requiring the tenant to pay rent into the registry of the court pending the outcome of the proceedings.[1] Cunningham, the tenant, contends that since in such notice cases, the landlord cannot satisfy the requirements of *Bell v. Tsintolas Realty Co.*, 139 U.S.App.D.C. 101, 430 F.2d 474 (1970), no protective order can be entered. Phoenix Management, Inc. (Phoenix) argues that *Bell* is not dispositive of the issue. Phoenix urges that its need for an order requiring payment into the registry is to avoid an argument of waiver of the notice by acceptance of the rent for a period after the expiration of the notice, citing us to *Habib v. Thurston*, 517 A.2d 1 (D.C.1985). We hold that an order requiring payment into the registry of the court may be made in the court's discretion in such circumstances; we affirm the trial court's entry of such an order and subsequent disbursement order in this case.

On May 30, 1985, Phoenix filed suit in the Landlord and Tenant Branch seeking possession of Cunningham's apartment based on expiration of notice to cure or quit because of the tenant's alleged violation of a lease covenant not to engage in unlawful activities on the premises. There was no allegation of nonpayment of rent. Phoenix sought an order requiring Cunningham to pay the lease rent into the registry of the court. Cunningham opposed the motion on two grounds: 1) her rent was fully current and thus there was no basis for a protective order; and 2) there were serious housing code violations and thus any protective order should be in an amount less than the lease rent. After a hearing, the trial court entered an order requiring Cunningham to pay the monthly lease rent of $81.00 into the registry of the court.[2] Cunningham noted an appeal of this ruling; the proceedings in the trial court continued.

Cunningham complied with the order for approximately one year. Upon her default in making a payment thereafter, Phoenix sought and was granted an order striking Cunningham's pleadings.[3] Thereafter, the trial court entered judgment for possession and, over Cunningham's objection, disbursed the funds from the registry to Phoenix. Cunningham duly appealed from the entry of both the deposit and disbursement orders. We consolidate Cunningham's interlocutory appeal with her appeal from the final order.[4]

The United States Court of Appeals for the District of Columbia referred to the idea of a protective order in the final footnote of *Javins v. First National Realty Corp.*, 138 U.S.App.D.C. 369, 428 F.2d 1071, 1083 (1970), *cert. denied*, 400 U.S.

---

1. Although we have considered cases with a protective order based on notice to quit, we have never decided the propriety of the order per se in a notice case. *See, e.g., Temple v. Thomas D. Walsh, Inc.*, 485 A.2d 192 (D.C.1984); *Hamilton v. Calomiris Investment*, 461 A.2d 466 (D.C.1983); *McNeal v. Habib*, 346 A.2d 508 (D.C. 1975).

2. Cunningham's apartment was subsidized by the Department of Housing and Urban Development (HUD). Under its Section 8 "Set-aside" program, HUD pays a monthly subsidy to the landlord in an equal amount to the difference between a tenant's rent and the fair market rent of the apartment. While Cunningham was paying the $81.00 a month into the court registry, Phoenix continued to receive payments directly from HUD throughout the litigation.

3. Cunningham does not contend on appeal that the trial court abused its discretion by entering this order.

4. Thus, we need not decide whether the protective order is subject to an interlocutory appeal. Compare *Dameron v. Capitol House Associates*, 431 A.2d 580 (D.C.1981), with *Taylor v. First American Title Co.*, 477 A.2d 227 (D.C.1984). We are presently *en banc* to resolve this issue in *McQueen, et al. v. Lustine Realty Co.*, No. 86-474.

925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970), a suit based on nonpayment of rent. The court indicated that payment into the court registry was "an excellent protective procedure." *Id.* at 381 n. 67, 428 F.2d at 1083. Shortly thereafter in *Bell v. Tsintolas Realty Company, supra,* the same court, in enumerating several factors which may be considered in determining the propriety of the entry of a protective order, held that the Landlord and Tenant Branch of the Superior Court could enter protective orders in suits for possession of real estate based on nonpayment of rent.[5] Subsequent to *Bell,* also in the context of nonpayment cases, we have addressed this same issue in a series of decisions, resulting in the evolution of a number of principles. Fundamental among them are:

1. With the advent of affirmative defenses and the right to trial by jury, landlord and tenant proceedings for possession are no longer as summary in nature as they previously had been. *See Bell, supra; Davis v. Rental Associates,* 456 A.2d 820 (D.C.1983) (en banc).

2. The tenant remains in possession during the course of the litigation. *See Bell, supra; McNeal v. Habib, supra* note 1.

3. Requiring the tenant to pay rent during the litigation is to require no more than the tenant contracted to do at the inception of the tenancy. *See Bell, supra.*

4. Orders requiring the funds to be paid into the registry of the court entail no prejudice to any party concerning the ultimate disbursement of the funds. *McNeal v. Habib, supra* note 1.

5. The protective order is needed to give protection to the landlord by providing a fund for the payment of the rents ultimately found to be owed. Under some circumstances, it may also benefit the tenant. *See McNeal v. Habib, supra* note 1.

As the foregoing principles indicate, in our efforts to fashion an equitable remedy in this area, we have attempted to balance the hardship to all parties as well as the public interest, always mindful of the traditional limitations on invoking equitable relief. We take the same approach in this case, evaluating the same principles.

As to the first four of the enumerated principles, there is no difference between a nonpayment action and one based on notice. It is only as to the remaining factor—providing a fund for the payment of rent ultimately found to be due—that notice cases differ from nonpayment cases. The premise of the landlord's claim of need for a protective order is the fear that acceptance of rent for a period after the expiration of the notice to quit may be found to constitute a waiver of the notice to quit. In *Habib v. Thurston, supra,* we held that the acceptance of rent by the landlord for a term after the expiration of the notice to quit may or may not amount to a waiver depending upon the parties' mutual intent derived from all the evidence—i.e., it is a question of fact for the trier of fact. *See also Kaiser v. Rapley,* 380 A.2d 995, 997 (D.C.1977). This landlord's concern is a legitimate one. Providing the mechanism of a protective order permits the tenant to tender the rent into the registry of the court, rather than to the landlord and thus eliminates a "waiver" argument.[6]

Cunningham contends, however, that given the permissible sanction for noncompliance with a protective order—striking the tenant's pleadings and entry of a default, *see Mahdi v. Poretsky Management,* 433 A.2d 1085 (D.C.1981)—a protective order

---

5. *Bell* allows the trial court to assess the landlord's need for a protective order by considering:
   1. the amount of rent alleged to be due;
   2. the number of months the landlord has not received even a partial rental payment;
   3. the reasonableness of the rent;
   4. the amount of the landlord's monthly obligations for the premises;
   5. whether the tenant has been allowed to proceed *in forma pauperis;*

   6. whether the landlord faces a substantial threat of foreclosure.

6. In determining the amount of the protective order in notice cases, the court is guided by the factors set forth in *Bell v. Tsintolas Realty Company, supra,* specifically to include the evaluation provided for by *Bell* when housing code violations are shown. 139 U.S.App.D.C. at 111, 430 F.2d at 484.

effectively converts a notice action into a nonpayment one. We see no legitimate interest in compelling the landlord to seek to amend the notice suit to add a claim for nonpayment in order to qualify for a protective order or to file a subsequent action for back rent where the tenant eventually defaults in payment of rent. No useful purpose is served by thus exalting form over substance.

*Affirmed.*[7]

FERREN, Associate Judge, dissenting:

The majority's only announced reason for allowing a protective order in a landlord's action for possession based solely on a notice to quit is to protect the landlord against an alleged "waiver of the notice by acceptance of the rent for a period after the expiration of the notice." *Ante* at 1100. I see no reason why the landlord cannot easily protect against such a waiver by providing in the lease "that acceptance of rent for a period after a breach, or after expiration of a related notice to quit, does not waive the landlord's option to terminate." *Habib v. Thurston*, 517 A.2d 1, 7 (D.C. 1985). Or the landlord could provide to the same effect in the written notice to quit itself. *See id.* at 25 n. 21. When the landlord can thus provide for its own protection, and when nonpayment of rent has never been an issue, there is no reason why this court should extend to a notice case the protective remedy designed for a nonpayment case. It is potentially full of mischief. Respectfully, therefore, I dissent. Because I believe the trial court erred in entering the protective order, I would reverse and remand for the court: to vacate the protective order; to order the landlord to return to the court registry all the funds the landlord received from the registry; to order release of those funds to the tenant; and to reinstate the tenant's pleadings in the notice case—all without prejudice to the parties' other rights. *See Adams v. Jonathan Woodner Co.*, 475 A.2d 393, 398

(D.C.1984) (citing *Quick v. Paregol*, 68 A.2d 211, 214 (D.C.1949)).

## I.

The majority's approach—which now, presumably, will become uniformly applicable in the Landlord and Tenant Branch—overlooks a very practical problem that is likely to result in considerable unfairness to tenants. Issuance of a protective order in a notice case creates, in effect, an inchoate complaint for nonpayment of rent (or for the reasonable value of the premises). Consequently, in the event that a tenant fails to make a payment under the protective order, the trial court is likely to strike the tenant's pleadings in the notice case and enter judgment for the landlord as in a nonpayment case, *ante* at 1101, even though the landlord could not have sued initially for nonpayment of rent and there has been no history that would have justified a protective order for nonpayment of rent in the first place. *See Bell v. Tsintolas Realty Co.*, 139 U.S.App.D.C. 101, 110–11, 430 F.2d 474, 483–84 (1970) (court may issue protective order in nonpayment case "only when the landlord has demonstrated an *obvious need* for such protection") (emphasis added).

My principal concern is that a tenant in this situation is not given adequate notice of what is really going on and thus may not be able adequately to defend. More specifically, a tenant may have housing code violation defenses to a nonpayment action. *See Javins v. First National Realty Corp.*, 138 U.S.App.D.C. 369, 428 F.2d 1071, *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed. 2d 185 (1970). These could not have been alleged as defenses in the notice case (unless raised in the context of a defense of retaliatory eviction), *Habib v. Thurston*, 517 A.2d at 15; but such violations, if proved, could serve to prevent a judgment of possession for the landlord. *See Javins*, 138 U.S.App.D.C. at 380–81, 428 F.2d at 1082–83. Thus, if a tenant is to receive adequate protection when the case abruptly

---

**7.** Cunningham did not seek a *McNeal* hearing in the trial court; she raises no such issue on this appeal.

shifts from a notice action to a nonpayment action without the filing of a formal complaint, there must be sufficient opportunity for the tenant—who may not have legal counsel readily available[1]—to supply a code violation defense and to demand a jury trial (if none has previously been requested). Otherwise, a tenant defending a notice case is likely to be evicted for failure to make a payment into the registry (in effect, for nonpayment of rent) without benefit of a complaint or of a meaningful opportunity to defend. I am not confident that tenants will receive the necessary protections.[2]

This is all the more a problem because of the real possibility that payments under a protective order are likely to be set too high when there are code violations, especially when the tenant is uncounseled; and yet there is no assurance that the trial court will review the level of the protective order in deciding whether to strike the tenant's pleadings upon a default. *Compare Davis v. Rental Associates, Inc.*, 456 A.2d 820, 826–27 (D.C.1983) (en banc) (plurality opinion), *with id.*, 456 A.2d at 831–34 (Ferren, J., concurring in the judgment only).

In short, a tenant defendant in a notice case will, in effect, upon entry of the protective order, be secretly sued for "anticipated nonpayment of rent" when (1) this has never been a problem, (2) the tenant may not be adequately counseled to consider a jury trial if not previously demanded, (3) there is a likelihood that the protective order will be set at too high a level, given code violations that the tenant could not properly have alleged in opposition to the notice case itself, and (4) the trial court is not likely to scrutinize the level of the protective order in deciding whether to strike an eventually defaulting tenant's pleadings. That is not fair.[3]

II.

The record of this case reflects the problem, although the tenant's counsel, apparently for tactical reasons, chose not to highlight it. Counsel proffered evidence of code violations in the written opposition to the landlord's oral motion for a protective order and again at the time of the hearing on the protective order. The trial court declined to hear the evidence. The court first noted that of the total monthly rent ($627), the U.S. Department of Housing and Urban Development (HUD) paid all but $81 under a subsidized housing program. *See ante* at 1100 n. 2. The court then summarily rejected counsel's argument that an abatement would come "off of the tenant's share first." The court thus concluded that no abatement, even if justified, could help the tenant since it was inconceivable that code violations would reduce the fair market value of the apartment below $81.

The tenant's counsel did not argue, as a fallback, that an abatement justified by code violations should be apportioned between HUD and the tenant; he preferred to reargue, more fundamentally, his basic

1. *See Davis v. Rental Associates, Inc.*, 456 A.2d 820, 833 (D.C.1983) (en banc) (Ferren, J., concurring in the judgment only) ("many tenants whose cases are continued for trial become subject to protective orders without the help of a lawyer").

2. In the present case, the trial court struck the tenant's pleadings for failure to make only one rental payment after complying with the protective order for approximately a year. *Ante* at 1100. Appellant does not contend on appeal that the trial court has abused its discretion in doing so. *Ante* at 1100 n. 3. *But see Davis*, 456 A.2d at 826–27 (plurality opinion) (extent of, and reasons for, noncompliance with protective order are factors trial court must consider in deciding sanction to impose on tenant). As a rule, however, the landlord's motion to strike

should not be granted summarily; "the trial court must carefully scrutinize the reasons for the tenant's default and may, under the circumstances, deny the motion. *See Battle v. Nash*, 470 A.2d 1252 (D.C.1983): *Davis*, 456 A.2d at 831, 832–34 (Ferren, J., concurring in result)." *Habib v. Thurston*, 517 A.2d 1, 25 n. 21 (D.C. 1986).

3. Another necessary protection should not be overlooked. A tenant who has not been permitted to allege code violations as a defense to the notice case, *see Habib v. Thurston*, 517 A.2d at 15, must be afforded an opportunity to do so with respect to any disbursement from the registry at a so-called "*McNeal* hearing." *See Habib v. Thurston*, 517 A.2d at 18–19; *McNeal v. Habib*, 346 A.2d 508 (D.C.1975).

point (with which I agree): that no protective order whatsoever could be justified in a strictly notice case since there had been no evidence of nonpayment of rent creating the "obvious need" required for such an order. *See Bell,* 139 U.S.App.D.C. at 111, 430 F.2d at 484. Consequently, counsel did not directly join issue with the court's observation: "I still don't understand why Ms. Cunningham should not be required to pay eighty-one dollars into the registry of the court during the pendency of this case no matter what housing code violations she is asserting." Nor did counsel later request a *McNeal* hearing when the court ordered disbursement from the registry. *Ante* at 1102 n. 7; *see supra* note 3.

The trial court's failure to factor code violations into the level of the protective order does not mean that code violations are not relevant; it means, rather, that counsel elected not to make enough of an issue of the alleged violations to press the trial court for a ruling, either at the time the protective order was entered or thereafter. Unquestionably, as the majority acknowledges, *ante* at 1101 n. 6, evidence of housing code violations is admissible in determining the level of any protective order.[4]

In summary, although I cannot say the tenant in this case was a victim of some of the inequities outlined above, since she was competently counseled, I am not confident that the remedy the majority licenses today will be equitably employed in the cases where a tenant is on his or her own. Landlords can protect themselves in notice cases by reserving the right (in the lease or in the notice itself) to continue to receive the rent, without waiving the notice. *Habib v. Thurston,* 517 A.2d at 25 n. 21. The fact that landlords would forego receiving the rent in favor of a protective order requiring payments into the court registry suggests to me a strategy of fashioning a shortcut nonpayment action when there is no basis

whatsoever for filing one. *Id.* This court should not be a party to such thinking.

cordingly, those violations arguably were relevant to the level of the protective order. The tenant did not present these arguments to the trial court and has not raised them on appeal.

---

4. The evidence of code violations also presumably was admissible in the notice case itself because the tenant's "eighth defense" was "retaliatory action." *See Habib v. Thurston,* 517 A.2d at 15; *McNeal v. Habib,* 346 A.2d at 514. Ac-