Anita N. WASHINGTON, Appellant,

v.

H.G. SMITHY COMPANY, Appellee.

No. 98–CV–1757.

District of Columbia Court of Appeals.

Argued Dec. 9, 1999.
Decided March 15, 2001.

Nathan A. Neal, with whom Ann Marie Hay, Executive Director, D.C. Law Students in Court, and Janice M. Rodriguez, Law Student, were on the brief, Washington, DC, for appellant.

Michael J. Carmody, with whom Anne M. Magruder, McLean, VA, and Cynthia R. Cook were on the brief, for appellee.

Before TERRY, FARRELL, and WASHINGTON, Associate Judges.

**TERRY, Associate Judge:**

In this landlord-tenant proceeding, the tenant appeals from an order releasing to her former landlord's agent the funds she had deposited in the court registry, pursuant to a protective order, during the pendency of that landlord's action for possession. We affirm.

I

On March 9, 1990, appellant leased an apartment on Xenia Street, S.W. The building was owned by several members of the Carone family ("the Carones"), and H.G. Smithy Company ("Smithy") was the property manager. In May 1993 appellant filed a petition with the Rental Accommodation and Conversion Division ("RACD") of the Department of Consumer and Regulatory Affairs alleging that, before her tenancy began, the rent ceiling filed with the RACD for her unit had been improperly increased. A hearing on appellant's petition was held on October 25, 1993, at which Smithy argued that the petition was barred by the statute of limitations, D.C.Code § 45–2516(e) (1996).

While the petition was pending before the RACD, Smithy sued appellant for possession of the apartment because she had failed to pay rent for the month of November 1993. On December 8, 1993, the parties asked the landlord and tenant court to enter a *"Drayton* stay"[1] of the court case, pending final resolution of the matter before the RACD. As part of the stay, appellant agreed to deposit each month into the court registry a sum equal to her monthly rent. By consent of the parties, the court entered a protective order requiring appellant to pay $497.00 into the registry on the fifth day of each month until the matter was resolved. Minor adjustments were

---

1. *See Drayton v. Poretsky Management, Inc.,* 462 A.2d 1115 (D.C.1983).

made to the protective order payments from time to time thereafter, with appellant consistently making timely payments.

On April 19, 1994, the RACD dismissed appellant's rent ceiling petition, concluding that it was indeed barred by the statute of limitations. She appealed from that dismissal to the Rental Housing Commission ("RHC"). While the administrative appeal was pending before the RHC, appellant's counsel sent two letters to Smithy requesting repairs to the apartment. The first letter, dated August 2, 1994, stated that appellant was "frustrated by leaking and water damage in her living room and kitchen that she believes is related to plumbing for the apartment above hers." The second letter, dated September 15, 1994, asserted that appellant was "concerned because roaches have been entering her refrigerator" and "that she recently had a flood in her apartment [and] that her apartment needs to be painted and that there is loose paint."

On May 14, 1998, four years after appellant had filed her appeal, the RHC affirmed the dismissal of the rent ceiling action. On June 15 appellant filed a petition in this court for review of that decision. Shortly thereafter, in July 1998, the Carones sold the property to Ronald and Sharon Campbell and Gary and Bernadine Evans ("the new owners"). At the time of the sale, appellant had paid $24,042.00 into the registry, pursuant to the protective order, in lieu of rents due under the lease. After the property was sold, the new owners hired Delwin Realty Company to be the property manager, and Smithy ceased to perform that function. On August 10, 1998, Delwin Realty filed a new complaint for possession based upon appellant's failure to pay rent after the date of the sale.

On August 27 this court dismissed appellant's petition for review of the RHC decision for procedural reasons. Then, on October 2, Delwin Realty and appellant settled the landlord-tenant case by filing a praecipe requesting the court to release to Delwin from the registry the sum of $929.68, representing the pro-rated rent from the date of the sale through September 1998. As part of the settlement, Delwin Realty agreed to make various repairs to appellant's apartment.

On October 9, 1998, Smithy filed a "Motion to Release Funds from the Court Registry," asserting that it was "entitled to the funds ... which represent rent due under the lease agreement between the parties from August 1, 1994, through July 9, 1998 (pro-rated for July 1998 following sale of the property by Owner to New Owner on July 9, 1998)." Appellant filed an opposition arguing that Smithy lacked standing to seek release of the funds because, as of July 9, 1998, Smithy was no longer the agent of the owner of the property and that, in any event, the settlement agreement between appellant and Delwin Realty barred any such release under the doctrine of *res judicata*. Smithy replied that it had standing because the outcome of Delwin's action for possession was irrelevant to the issue of who was entitled to receive funds previously paid into the court registry under the protective order. After a hearing on the motion, the trial court issued an order releasing all funds remaining in the registry to Smithy. The court concluded that Smithy had standing to seek disbursement of the funds in the registry, that the landlord-tenant action filed by Delwin Realty for rent accruing after the sale of the property and the subsequent settlement did not have *res judicata* effect on Smithy's claim, and that there was "no basis" for holding a hearing under *McNeal v. Habib*, 346 A.2d 508 (D.C.1975).[2] On De-

---

2. On the latter point, the court said in its order:

cember 31, 1998, the clerk of the court released the funds in the registry to Smithy, pursuant to the court's order. Appellant's motions for a stay of that order were denied by the trial court and by this court.

On appeal, appellant renews her arguments that Smithy lacked standing to seek release of the funds after the property was sold and that the settlement between herself and Delwin Realty bars any payment to Smithy under the doctrine of *res judicata.* In addition, she contends that she was entitled to a *McNeal* hearing before the disbursement of the funds from the registry.

## II

■ Appellant's argument that Smithy lacked standing to seek release of the funds from the registry is unpersuasive. At the time the property was sold in July 1998, appellant had paid into the registry the sum of $24,042.00 for rents properly due to Smithy, and ultimately to the landlords (the Carones), under the lease.[3] The fact that Smithy ceased to be the property manager after the property was sold had no effect on its pre-existing claims for rent, and hence to money paid into the registry in lieu of rent, at a time when Smithy was still the landlords' agent prior to the sale. *See Cohen v. Food Town, Inc.,* 207 A.2d 122, 124 (D.C.1965) ( "the landlord has the right to sue for each installment of rent as it becomes due"); *Paregol v. Smith,* 103 A.2d 576, 577 (D.C.1954) ("[t]he landlord is not required to join his claim for rent with his claim for posses-

sion, but may make the claim for rent in a separate action"); *cf. Tutt v. Doby,* 148 U.S.App. D.C. 171, 176, 459 F.2d 1195, 1197 (1972) (default judgment in action for possession does not bar tenant from litigating amount of rent due in a subsequent action).

Contrary to appellant's belief, the sale of the property to the new owners merely transferred the right to collect rent on the property from Smithy to Delwin Realty *as of the date of the sale;* rent payments due before that date were not affected. In fact, by the express terms of the sale contract, rents due under the lease were to be adjusted as of the date of the sale. Appellant's suggestion that the conveyance of the property acted retroactively to transfer to Delwin and the new owners the right of Smithy to receive rents due and payable before the sale finds absolutely no support in the case law. To accept appellant's argument would be particularly unfair to Smithy, since it had no power to prevent the sale of the property before its claim for rent was satisfied. To the contrary, Smithy is "entitled to judicial protection of [its] fair compensation" for appellant's use of the apartment while the litigation—before both the RHC and the courts—was in progress. *Dameron v. Capitol House Associates, Ltd.,* 431 A.2d 580, 584 (D.C.1981).

Appellant's argument is also foreclosed by this court's decision in *Temple v. Thomas D. Walsh, Inc.,* 485 A.2d 192 (D.C.1984). In *Temple* a landlord sued a tenant for possession after serving a thirty-day notice to quit. The tenant moved to dismiss on

---

Pursuant to [*McNeal* ], the parties to this action may be entitled to a hearing to determine how the funds in the registry should be disbursed. A hearing is required if there is a basis for granting the tenant a rent abatement because of overcharges, housing code violations, and the like. Here there is no basis. The only dispute in this case was over the rent

levels, with the plaintiff [landlord] prevailing at the administrative levels and in the D.C. Court of Appeals.

**3.** Indeed, Smithy as the landlords' agent is itself deemed to be a landlord under the rental housing code. *See* D.C.Code § 45–2503(15) (1996).

the ground that the notice to quit was invalid, and the court granted the motion. Both parties then sought release of funds paid into the court registry under a protective order. During a hearing on the issue, the tenant made an argument—similar to the argument appellant makes here—that she was entitled to the funds because she had prevailed in the underlying action for possession. The landlord countered that the tenant had enjoyed full use of the property during the pendency of the action and thus that the funds should be released to the landlord. The trial court agreed with the landlord.

This court affirmed, observing that "[t]here can be no doubt that the landlord had a right to be compensated in some measure for the tenant's use and enjoyment of [the] property" and that "[t]he disbursement of [registry] funds often depends on factors not at issue (or not resolved) in the underlying action, particularly the presence or absence of housing code violations which might entitle the tenant to a reduction in rent." *Id.* at 194. Because the tenant in *Temple* had failed "to offer any evidence which would warrant a reduction in the amount of rent due under her lease," we held that the trial court acted properly in releasing the funds to the landlord. *Id.; see also City Wide Learning Center, Inc. v. William C. Smith & Co.,* 488 A.2d 1310, 1314 (D.C.1985).

Like the tenant in *Temple,* appellant made no specific allegation to the court of any housing code violations.[4] In fact, as the trial court correctly observed, *supra* note 2, the only real dispute in the underlying case was over the rent levels, and on that issue Smithy prevailed in both the administrative proceedings and ultimately in this court. In these circumstances, we

conclude that appellant's payments into the registry are best categorized as "rent" due under a subsisting tenancy. *See Habib v. Thurston,* 517 A.2d 1, 13 (D.C.1985). "Where, as here ... no entitlement to an offset is even alleged, the court may properly release the funds in the registry to the landlord...." *City Wide Learning Center,* 488 A.2d at 1314 (citation omitted).

In sum, we hold that Smithy had standing to seek release of any and all funds paid into the registry during the period in which Smithy was the managing agent for the property, and that the sale of the property while the litigation was in progress had no effect on its standing.

### III

◼ In a related argument, appellant contends that the settlement of the second landlord-tenant action between Delwin Realty and herself had *res judicata* effect on Smithy's claim to the funds, which were paid into the registry under a protective order entered in the first landlord-tenant action. This argument fails for a number of reasons.

◼ Under the doctrine of *res judicata,* "a prior judgment on the merits raises an absolute bar to the relitigation of the same cause of action between the original parties or those in privity with them." *Goldkind v. Snider Brothers, Inc.,* 467 A.2d 468, 473 (D.C.1983) (citations omitted). Smithy was the property manager for the Carones until July 1998 and, as such, was entitled to receive the rent for this period. After the property was sold in July 1998, however, Delwin Realty assumed the role of property manager and had a claim to all rent due thereafter. Although Smithy and Delwin Realty were both entitled to sue

---

4. See part IV, *infra*. The first mention of housing code violations was made in a motion for stay after the funds were ordered to be released, but even in that motion no specific violations were identified.

appellant for unpaid rent, their claims did not overlap because they covered two different periods under the lease, *see Cohen,* 207 A.2d at 124, and thus they had two separate causes of action. A judgment on Delwin's claim would therefore have no *res judicata* effect on Smithy's claim for rent due at a different time.[5]

Moreover, Smithy is clearly not in privity with Delwin Realty. In a related context, we have adopted the following definition of privity:

> The term privity denotes a mutual or successive relationship to the same rights of property. Agents and principals do not, as such, have any mutual or successive relationship to rights of property and therefore are not ordinarily in privity with each other. Further, no party is, as a general rule, bound in a subsequent proceeding by a judgment unless the adverse party now seeking to secure the benefit of the former adjudication would be prejudiced by it if it were to be determined the other way.

*Usher v. 1015 N Street, N.W., Co-op. Ass'n,* 120 A.2d 921, 922 (D.C.1956). In the first landlord-tenant action, after Smithy sued appellant for possession based on her non-payment of rent for November 1993, she agreed to pay her rent into the registry of the court, under a protective order, until the matter was resolved. In the second action, Delwin Realty sued appellant for possession based upon her non-payment of rent after July 9, 1998, the date on which the property was sold. Thus each was the agent of two separate and distinct property owners at different periods of time. Moreover, there is noth-

ing in the record to suggest that Delwin Realty acquired any interest in Smithy's claim that would even suggest a "mutual or successive" relationship. We hold, accordingly, that Smith and Delwin Realty are not and never were in privity, and that the settlement between Delwin Realty and appellant does not have any *res judicata* effect on Smithy's claim to the money in the registry.

## IV

■ Finally, appellant argues that she was entitled to a *McNeal* hearing before the court released the funds to Smithy. The trial court ruled that there was no basis for a hearing because "[t]he only dispute in this case was over the rent levels...." While it appears that appellant did notify Smithy of potential code violations, she failed to give timely and specific notice of such violations *to the trial court,* as the law requires. Consequently, the court was not aware of any alleged violations and did not err in denying a hearing.

■ "A *McNeal* hearing in a landlord-tenant case is specifically designed to determine whether housing code violations existed while a protective order was in effect, and, if so, whether those violations would entitle the tenant to an abatement of the rent paid into the court registry under the protective order." *Bown v. Hamilton,* 535 A.2d 909, 909 (D.C.1988); *accord, e.g., Goodwin v. Barnes,* 456 A.2d 1246, 1247 (D.C.1983). In this regard, *McNeal* and its progeny stand for the proposition that "the tenant has to raise code violations in a way that timely notifies the landlord *and the court* that a *Javins* defense will be asserted at the post-trial evidentiary hear-

---

5. Appellant contends that Delwin waived its right to any funds in the registry for rents due before the sale. We hold, however, that Delwin never had any such right to waive, for it was not the Carones' agent and thus had no viable claim for rent due to the Carones before the date of sale.

ing on disbursement of registry funds." [6] *Habib v. Thurston,* 517 A.2d at 18 (emphasis added); *see Smith v. Interstate General Corp.,* 462 A.2d 1133, 1134 n. 3 (D.C. 1983) (when no entitlement to an offset has been alleged, the court may release funds in the registry to the landlord without a *McNeal* hearing). Thus it is usually "sufficient for a tenant orally to notify the landlord *and the court* about code violations early enough, with sufficient specificity, to afford the landlord a reasonable time within which to prepare for the *McNeal* hearing, [although a] better practice, of course, would be the timely filing of a written pleading directed at the protective order. . . ." *Habib,* 517 A.2d at 18 (emphasis added).

In the case at bar, appellant's counsel sent two letters to Smithy indicating the existence of possible housing code violations. The first, dated August 2, 1994, referred to "leaking and water damage in [appellant's] living room." The second, dated September 15, 1994, said that the apartment had recently flooded because of drainage problems and that "roaches had been seen entering her refrigerator." While these letters appear to be sufficient to put Smithy on notice of possible housing code violations, appellant never once informed the court of such violations. That was a fatal omission.

■ Appellant argues, nevertheless, that the court was placed on notice of the alleged violations by the settlement praecipe between Delwin Realty and appellant in the second landlord-tenant action. That praecipe, which was attached to appellant's opposition to Smithy's motion to release the funds, listed various repairs to be undertaken by Delwin Realty. Appellant maintains that this was sufficient to put the trial court on notice of housing code violations. We cannot agree. It is unreasonable to suggest, as appellant does, that the court would have construed a praecipe in a totally separate action, especially one between appellant and another party, as notification of current housing code violations in the present case. Neither at the hearing on Smithy's motion nor in appellant's written opposition to the motion was there any mention of housing code violations.[7] In any event, when the alleged code violations are not raised at the time a protective order is entered, which was the situation here, "we leave it to the sound discretion of the trial court to determine whether a tenant has given timely, specific notice of an intended *Javins* defense at the *McNeal* hearing." *Habib,* 517 A.2d at 19. Since the issue never even came up in the trial court until after the funds were released, see note 4, *supra,* we would have no basis for finding an abuse of discretion even if we were disposed to do so.

## V

The order releasing the funds in the registry to Smithy is therefore

*Affirmed.*

---

6. A *"Javins defense"* is an assertion that there should be a total or partial abatement of the rent because of housing code violations. *See Javins v. First National Realty Corp.,* 138 U.S.App. D.C. 369, 380–381, 428 F.2d 1071, 1082–1083, *cert.denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970).

7. Appellant's opposition to the motion to release funds focused exclusively on standing and *res judicata.*